882 F.2d 885
 28 Fed. R. Evid. Serv. 763
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Calvin RICKS, a/k/a Joe Dancer, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcell MOFFETT, a/k/a Black Barney, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maurice David KING, a/k/a Peanut, Defendant-Appellant.
 Nos. 87-5096L, 87-5097 and 87-5098.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 11, 1989.
Decided Aug. 18, 1989.
 
 Paul Michael Weiss (Warren Gary Kohlman, Kohlman & Fitch on brief), for defendants-appellants.
 Charles Preston Scheeler, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty. on brief), for plaintiff-appellee.
 Before ERVIN, Chief Judge, WINTER and CHAPMAN, Circuit Judges.
 HARRISON L. WINTER, Circuit Judge:
 
 
 1
 Defendants Thomas Calvin "Joe Dancer" Ricks, Marcell "Black Barney" Moffett, and Maurice David "Peanut" King appeal their convictions on various drug-trafficking related charges. Defendants were first convicted of these offenses in 1983, but we ordered a new trial because of prejudicial error with regard to the selection of the jury. See United States v. Ricks, 776 F.2d 455 (4 Cir.1985), 802 F.2d 731 (4 Cir.) (in banc), cert. denied, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986). Following a second trial, defendants were again convicted and again appeal. We affirm.
 
 I.
 
 2
 Ricks and King, along with defendant Clarence Meredith, headed a major drug distribution organization operating in Baltimore, Maryland. Moffett was a "lieutenant" overseeing distribution of heroin from one of several street corners controlled by the organization. The defendants were convicted of a variety of substantive narcotics possession and distribution offenses and of engaging in a conspiracy to possess and distribute narcotics in violation of 21 U.S.C. Sec. 846. In addition, Ricks, King, and Meredith were convicted of heading a continuing criminal enterprise in violation of 21 U.S.C. Sec. 848.
 
 
 3
 The case against defendants was proved largely as a result of assistance from Otis "Mike" Smith and to a lesser extent from Delphine Robinson who were police informers. Evidence was also collected as a result of the undercover efforts of Detective Arlene Jenkins who represented herself on various occasions as a companion of Smith and as a friend of Robinson. The investigation was coordinated by Detective Sergeant Gary Childs of the Baltimore City Police Department.
 
 
 4
 Smith first assisted Childs in the summer of 1980. After having his parole revoked, Smith re-established contact with Childs in late 1981 and began assisting Childs as an ongoing matter. Smith testified that he had known many of the defendants for years, had purchased heroin from King and Meredith in 1979 and 1980, and knew Ricks to be a partner of King and Meredith.
 
 
 5
 Smith first approached Ricks about purchasing heroin in late January 1982. Ricks refused, explaining alternatively that he was no longer in the heroin business and that he was being watched too closely by the police. In order to develop his credibility as a drug dealer, Smith began making small purchases of heroin from individuals at the organization's Ellsworth and Bond streets location and represented that he was reselling the heroin "in the county" where he could double his money. Accordingly, Smith was plausibly able to finance ever-larger purchases.
 
 
 6
 On March 16, 1982, Ricks contacted Smith and indicated that he was ready to deal with Smith directly. Over the course of three transactions that same month, Ricks, assisted by Moffett, sold Smith more than $10,000 worth of heroin. These purchases were made on 50% credit and consequently Smith owed Ricks $3,200 after the third purchase. Ricks was arrested on April 1, 1982 on homicide charges unrelated to the case, and was in custody during the remainder of the government's investigation. Smith subsequently paid this balance to King, and met with King, Meredith, and Moffett to arrange and complete sizable additional purchases. Smith was assured by Moffett that the debt to Ricks had been satisfied because "it was all in the same pot."
 
 
 7
 Ricks' arrest occurred outside his apartment at 9801 Tailspin Lane. Childs noticed that the arrest had been observed from the apartment window by defendant Beatrice Roberts, Ricks' girlfriend and roommate. He and other officers went to the apartment to announce themselves and explain the arrest. While waiting for Roberts to answer the door, they heard the shower running and toilet flushing. Roberts eventually opened the door explaining that she had been taking a shower: however, the officers observed that she was not wet and her shoes were covered with white powder.
 
 
 8
 At the time of Ricks' arrest, the officers were awaiting the issuance of a search warrant for the apartment. Afraid that Roberts had been destroying narcotics, Childs entered the apartment and checked the bathroom where he found the sink and shower faucets still running and the room covered with white powder. Childs also checked a nearby closet to see whether anyone else was present, unloaded a revolver he discovered, and then returned to the living room to await issuance of the warrant. When notified that the warrant had been issued, the officers searched the apartment and found mannite (a crystalline substance used to cut heroin), drug paraphernalia, another loaded weapon, and a bulletproof vest.
 
 
 9
 The affidavit supporting the search warrant for the Tailspin Lane Apartment was based on information given by Alicia Eley, a confidential informant, and on information developed independently during the course of the investigation. Eley's identity was not originally disclosed in the affidavit, but was made known at the insistence of the issuing judge who refused to issue the warrant otherwise. In April 1983, approximately one year after the search, Eley executed an affidavit specifically denying the allegations attributed to her in the search warrant affidavit.
 
 
 10
 At trial, Ricks asserted an entrapment defense contending that he was overcome by Smith's persistence in seeking to purchase heroin from him, and that he had acted only as a middleman for Smith rather than as an independent distributor. Ricks established that he was incarcerated during the early portion of the investigation, and testified that he supported himself after release from prison in early 1981 through gambling and working in a grocery store.
 
 
 11
 The government presented substantial evidence that two grocery stores owned by Ricks, Meredith, and King as well as gambling trips to Atlantic City were part of a carefully conceived money laundering scheme. Responding to Ricks' entrapment defense, the government was permitted to present evidence concerning his arrest following the stop of a vehicle carrying Ricks and driven by King in early 1979. One of the arresting officers testified that he observed Ricks throw a brown paper bag containing thirty glassine bags of "brownish white powder" he thought to be heroin from the car.[1]
 
 
 12
 Moffett contended that Smith was lying about Moffett's participation in the one sale of heroin to Smith to which he was directly linked. King's defense was that he made a substantial amount of money gambling throughout the late 1970's and early 1980's, and later invested heavily in the two grocery stores. King also contends that he is the victim of mistaken identity, having been confused for his brother Brian. Based on the alleged inconsistency between Ricks' entrapment defense and their own asserted defenses, King and Moffett moved for severance of the trials. The motions were denied.
 
 II.
 
 13
 On appeal, defendants raise a variety of evidentiary and procedural objections to their convictions.
 
 A.
 Collateral Estoppel
 
 14
 In an effort to rebut Ricks' claim of entrapment by showing predisposition, the government was permitted to introduce testimony showing that he possessed a significant amount of heroin in February 1979. Ricks argues that the government is collaterally estopped from introducing this evidence because he was acquitted of narcotics charges arising from the incident in a previous state court proceeding. The government contends that the doctrine of collateral estoppel is inapplicable in this case because the prosecutions were pursued by different sovereigns.
 
 
 15
 In Ashe v. Swenson, 397 U.S. 436, 443-45, 90 S.Ct. 1189, 1194-95, 25 L.Ed.2d 469 (1970), the Supreme Court held that the double jeopardy clause embodies principles of collateral estoppel previously recognized as a matter of federal criminal law. The Court described the doctrine as follows:
 
 
 16
 "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
 
 
 17
 Id. at 443, 90 S.Ct. at 1194 (emphasis added).
 
 
 18
 Our previous decisions reveal that a prior acquittal may affect a subsequent prosecution in one of two ways. First, as in Ashe, collateral estoppel may bar the subsequent trial entirely if a factual issue previously resolved in defendant's favor is an essential element of the subsequently-prosecuted offense. Second, and more narrowly, collateral estoppel may serve to bar only the introduction of evidence concerning those factual issues previously decided in favor of defendant. See United States v. Ragins, 840 F.2d 1184, 1193-94 (4 Cir.1988).[2] In both the prosecution-bar and evidence-limiting contexts, the underlying question is whether the issue to be foreclosed from consideration was "necessarily determined" in defendant's favor. Ragins, supra.
 
 
 19
 However, Ricks' acquittal of narcotics law violations in a prosecution by the State of Maryland does not bar reconsideration of a factual issue presented in that case in a subsequent federal prosecution for different offenses. We conclude, as the government has argued, that the doctrine of collateral estoppel is inapplicable in this case because the parties in the two cases are not the same. See United States v. Bonilla Romero, 836 F.2d 39, 43 (1 Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). Our conclusion flows from the Supreme Court's definition of collateral estoppel in Ashe, supra, and the Court's continuing endorsement of the dual sovereignty doctrine in related contexts. See e.g., Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).[3]
 
 B.
 Evidentiary Hearing re Search Warrant
 
 20
 Ricks also challenges the district court's failure to conduct an evidentiary hearing in accordance with Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine whether evidence obtained from the search of his Tailspin Lane apartment should have been suppressed.
 
 In Franks, the Supreme Court held:
 
 21
 [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request.
 
 
 22
 438 U.S. at 155-56, 98 S.Ct. at 2676.[4] Ricks argues that Alicia Eley's disavowal of the statements attributed to her in the police officers' affidavit and the judge's refusal to issue the warrant without disclosure of Eley's identity satisfy these preliminary conditions for an evidentiary hearing.
 
 
 23
 We have previously stated our conclusion that the search of the apartment was supported by probable cause and that exigent circumstances excused the necessity of a warrant to enter and secure the premises. Ricks, 776 F.2d at 465. We find no reason to alter that conclusion. We are satisfied that the statements attributed to Eley (which she later disavowed) are simply corroborative of other unchallenged information contained in the officers' affidavit, and agree with the district court that the unchallenged portions are adequate to support issuance of the warrant. Having concluded that a warrant would have properly issued absent Eley's disavowed representations, we need not speculate as to the reasons the presiding judge insisted on the disclosure of her identity or as to the consequences of her disavowal.
 
 C.
 Continuing Criminal Enterprise
 
 24
 Ricks and King also challenge their convictions for engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. Sec. 848. Conviction of this offense requires the government to prove the following five elements: (1) defendant committed a felony violation of the federal drug laws; (2) such violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by defendant in concert with five or more persons; (4) defendant served as an organizer or supervisor, or in another management capacity with respect to these other persons; and (5) defendant derived substantial income or resources from the continuing series of violations. See 21 U.S.C. Sec. 848; United States v. Rhodes, 779 F.2d 1019, 1024 (4 Cir.1985), cert. denied, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986).
 
 
 25
 Ricks argues that the evidence is legally insufficient regarding the fourth of these elements, asserting that, at best, the government proved his supervision of only three other individuals. King concedes (for purposes of this portion of his appeal) that the government proved two substantive offenses, but argues that it is improper to count his conviction of the conspiracy charge as the predicate third offense to prove a "series" of violations.[5]
 
 
 26
 Ricks' argument was summarily rejected in our decision in his first appeal. Ricks, 776 F.2d at 464. There is more than adequate evidence on which the jury could properly conclude that Ricks was one of three principals in an organization involving more than twenty-four individuals. The government is not required to prove that the five individuals were supervised and acted in concert at the same time, or even that the additional five people were collectively engaged in at least one specific offense comprising the continuing series of violations. Rhodes, 779 F.2d at 1025-26. Moreover, the statute does not require that the additional five individuals be under the direct and immediate control or supervision of defendant: rather, defendant need only be shown to occupy "a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. Sec. 848(b)(2)(A) (emphasis added). Thus, a defendant may not insulate himself from CCE liability by carefully pyramiding authority so as to maintain fewer than five direct subordinates.
 
 
 27
 King's argument was fully discussed and rejected in our in banc rehearing of his first appeal and we perceive no need to say more. See United States v. Ricks, 802 F.2d 731, 737 (4 Cir.1986) (in banc).
 
 D.
 Evidentiary Rulings and Instructions
 
 28
 King challenges three decisions by the district court regarding admission of evidence, and also argues that the district court improperly refused to give a requested standard instruction for evaluating identification testimony.
 
 
 29
 First, King argues the district court erred in refusing to admit testimony proffered to show that Meredith operated a substantially similar drug business from June 1982, when King and Ricks were arrested, until late 1985 when Meredith was apprehended.[6] The purpose of such testimony was to demonstrate that Meredith alone was head of the drug ring. The court refused to allow the testimony under Federal Rule of Evidence 403 finding that any relevance of Meredith's activities subsequent to the period of the conspiracy alleged in the indictment was outweighed by dangers of confusion of the issues, misleading the jury, undue delay, etc.
 
 
 30
 The scope of permissible evidence under F.R.E. 403 is consigned to the sound discretion of the trial court. See Garraghty v. Jordan, 830 F.2d 1295, 1298 (4 Cir.1987) ("This court will defer to a trial court's Rule 403 balancing unless it is an arbitrary or irrational exercise of discretion."). Although King has a right to present meritorious defenses, it is far from clear that Meredith's ability to sustain a drug distribution operation while Ricks and King were in prison necessarily or significantly impugns the evidence showing King's integral involvement in the operation prior to his arrest. Nor would this evidence have noticeably strengthened King's contention that he derived his income from gambling rather than selling narcotics. Finally, as the district court observed, proper presentation of this testimony essentially would have required a retrial of the other multi-week case. Under these circumstances, we perceive no violation of defendant's due process rights and no error in the exclusion. Cf. United States v. Shorter, 809 F.2d 54, 61-62 (D.C.Cir.) (exclusion of expert testimony under F.R.E. 403 was appropriate and not unconstitutional where it was "unnecessary to a jury's assessment of the salient factual issues" and did not preclude defendant from persuading the jury through other testimony), cert. denied, --- U.S. ----, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987).
 
 
 31
 Second, King argues that the district court improperly allowed testimony concerning a July 1981 shootout. Responding to the incident, the police stopped a van from which several individuals then fled: King subsequently was found hiding nearby with a bullet in his foot. The government introduced this testimony to describe the drug activity in and around the Lafayette housing projects and to demonstrate defendants' access to weapons.
 
 
 32
 The district court admitted the testimony under F.R.E. 404(b) as relevant to defendant's intent, preparation, plan, and knowledge to distribute narcotics. King contends that the evidence was unfairly prejudicial because it was not linked directly to drug trafficking and was merely duplicative of evidence showing access to firearms.
 
 
 33
 We have previously ruled that evidence of firearms is relevant in narcotics conspiracy cases. See United States v. Collazo, 732 F.2d 1200, 1206 (4 Cir.1984), cert. denied, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985). The district judge carefully instructed the jury before receiving the testimony that defendants did not face any charges regarding firearms and that the evidence should not be considered as proof of character of any defendant. Thus, there was no error in the admission of this evidence under the circumstances of this case.
 
 
 34
 Third, King challenges the district court's refusal to admit a redacted version of Officer Marcellius Ward's cross-examination testimony given in the previous trial.[7] King sought to exclude those portions of Ward's prior testimony concerning King's previous arrests for counterfeiting and possession of marijuana.[8] The government argues that Ward's entire testimony is admissable against King under F.R.E. 804(b)(1) because King had full opportunity and identical motive to develop the testimony during the previous trial. The government also contends that it is entitled under the doctrine of completeness embodied in F.R.E. 106 to insist that the complete cross-examination be introduced.
 
 
 35
 We are not persuaded by either of the government's arguments. Rule 804(b)(1), properly read, provides only that Ward's previous testimony should not be excluded as hearsay; it does not operate to exempt Ward's testimony from the other rules of evidence, including those of relevance, undue prejudice, etc. In this case, the government is only "entitled" under Rule 804(b)(1) to introduce that portion of Ward's testimony that it would otherwise be permitted to elicit on direct examination at the second trial if Ward were still alive.[9]
 
 
 36
 Nor does F.R.E. 106 compel the introduction of the entire prior cross-examination when King seeks to introduce only a portion of it.[10] If Ward had been available to testify at the second trial, counsel for King obviously could have elected to pursue a more circumscribed cross-examination than his predecessor at the first trial. When the witness is unavailable, the doctrine of completeness does not automatically deprive defense counsel of this option. Rather, the rule is intended only to ensure that any admitted portion of a previous statement or writing is placed in its proper context. Accordingly, Rule 106 does not necessitate the introduction of those portions of Ward's cross-examination testimony which do not explain or clearly pertain to the limited portions King sought to introduce. See United States v. Soures, 736 F.2d 87, 91 (3 Cir.1984), cert. denied, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985); United States v. Wright, 826 F.2d 938, 946 (10 Cir.1987).
 
 
 37
 Although we have no reason to believe that there was any abuse of discretion in ordering the evidence admitted in its entirety,[11] we are unable to determine from the record furnished to us on appeal whether the district court properly concluded the testimony was contextually indivisible. Nevertheless, we conclude that any error associated with the admission of Ward's entire cross-examination testimony was harmless based on the abundance of other evidence linking King with illegal gambling, firearms, and, of course, drug trafficking. Any prejudice to character as a result of the jury learning of past counterfeiting activity and marijuana possession was de minimis.
 
 
 38
 Fourth, King contends the district court improperly refused to give a standard jury instruction for evaluating identification testimony. The requested instruction was based on King's claim that he had never met with Smith to discuss drugs and that the police officers had mistaken him for his brother Brian.
 
 
 39
 We have previously rejected this claim finding that the identification issue was not so central to the government's case nor the evidence of proper identification so weak that the district court abused its discretion in declining to give the instruction. Ricks, 776 F.2d at 466. In this appeal, King argues that his development of the misidentification issue was far more extensive in the second trial thereby raising a legitimate factual issue to be resolved by the jury. See Mathews v. United States, 485 U.S. 58, 108 S.Ct. 883, 887, 99 L.Ed.2d 54, 61 (1988) ("As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."); United States v. Hicks, 748 F.2d 854, 857 (4 Cir.1984) ("[A] defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence.")
 
 
 40
 We find no error in the trial court's refusal to grant the instruction. King may well have devoted more energy to his claim of misidentification during the second trial, but he was unable--beyond his own bald assertions--to establish the minimal evidentiary foundation entitling him to the instruction.
 
 
 41
 Smith testified unequivocally that it was King with whom he met on numerous occasions. Officer Childs testified that he personally observed King on several occasions in meetings with Smith and was able to identify King's voice in tape recorded conversations with Smith regarding heroin sales. Officer Jenkins also testified regarding her personal observation of King as one of the individuals with whom Smith dealt. Neither officer's identification testimony was impeached despite defense counsel's attempts to suggest that they had not gotten a good look at King and that under some unspecified circumstances mistakes might occur.
 
 E.
 Co-conspirator Statements
 
 42
 Also as an evidentiary matter, defendants collectively argue that numerous out-of-court statements of non-testifying witnesses were improperly admitted as those of "co-conspirators" pursuant to F.R.E. 801(d)(2)(E). Only one such instance is identified by defendants and that statement was admitted subject to the government's proffer that other evidence would establish the speaker as a co-conspirator. Defendants have not identified how the government failed to support the proffer or demonstrated that the statements were not made in furtherance of the conspiracy. Therefore, we conclude that this challenge is meritless. See United States v. Meredith, 824 F.2d 1418, 1428 (4 Cir.1987) ("The trial court, in its discretion, may admit such statements into evidence prior to proof of conspiracy, contingent upon a later showing of conspiracy by independent evidence."), cert. denied, 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987), --- U.S. ----, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988); cf. Bourjaily v. United States, 483 U.S. 171, 180-82, 107 S.Ct. 2775, 2781-82, 97 L.Ed.2d 144, 156 (1987) (trial court may look to the co-conspirator statement itself when seeking to determine whether a conspiracy exists).
 
 F.
 Reasonable Doubt Instruction
 
 43
 At trial, the district judge refused to give a jury instruction attempting to define the concept of "reasonable doubt" in accordance with our oft repeated general condemnation of such instructions. See e.g., United States v. Woods, 812 F.2d 1483, 1487 (4 Cir.1987); United States v. Love, 767 F.2d 1052, 1060 (4 Cir.1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986); Smith v. Bordenkircher, 718 F.2d 1273, 1276 (4 Cir.1983), cert. denied, 466 U.S. 976, 104 S.Ct. 2355, 80 L.Ed.2d 828 (1984).
 
 
 44
 Defendants argue that the instruction should have been given in this case because they have voluntarily assumed any risk of prejudice resulting from the tendered instruction. We disagree. Our rationale for condemning the instruction goes well beyond what a defendant might prefer. It follows that a defendant's assumption of the risk would not satisfy our purposes.[12]
 
 G.
 Severance
 
 45
 On appeal, King also contends that the district court improperly refused to sever his trial from Ricks' based on Ricks' entrapment defense and the government's introduction of rebuttal testimony concerning Ricks' 1979 arrest and possession of narcotics.[13] King argues these developments are irreconcilable with his contentions that Smith's testimony regarding King's involvement was fabricated; that the police officers had mistaken King for his brother Brian in meetings they observed; and that he supported himself through gambling.
 
 
 46
 The decision of whether to sever a trial lies within the sound discretion of the trial court and will not be overturned absent a clear abuse of discretion. United States v. Spitler, 800 F.2d 1267, 1271-72 (4 Cir.1986). The mere existence of antagonistic defenses among defendants is insufficient to require separate trials. Rather, a defendant must establish that the asserted conflict is so prejudicial that he will be denied a fair trial if tried jointly with his co-conspirators. Id. After reviewing the record, we find no abuse of discretion in denying King's request to sever the proceedings.
 
 
 47
 Ricks' testimony corroborated King's contention that King was a successful gambler, and at no point did Ricks link King with the narcotics transactions he acknowledged participating in as a middleman for Smith. Ricks' defense may have improved the credibility of Smith as a witness in the minds of the jurors, but it did not " 'create a serious danger that the jury would seize upon it alone as the dispositive indicia of guilt.' " Spitler, 800 F.2d at 1273 (citation omitted).
 
 
 48
 In addition, the district judge was careful to insist that the government not identify King as the driver of the car in its presentation of the rebuttal evidence showing predisposition on the part of Ricks. The court also instructed the jury prior to presentation of the rebuttal testimony that it should be considered only with respect to Ricks. We recognize that there was testimony presented several weeks earlier in the trial indicating Ricks and King were together at the time of the stop, but there was no mention of narcotics at that time. Even if the jurors connected the testimony, we do not believe that this information was sufficiently irreconcilable with King's defense to deprive him of a fair trial.
 
 
 49
 AFFIRMED.
 
 
 
 [1]
 King's involvement in this episode was not disclosed by the officer. Lab reports subsequently confirmed that the substance was heroin, but this information was struck from the officer's testimony as hearsay. Ricks' conviction for a handgun violation and his acquittal of drug charges arising from the incident were made known to the jury
 
 
 [2]
 Other circuits also recognize that collateral estoppel may bar the introduction of certain evidence although the subsequent prosecution is not precluded. See, e.g., United States v. Dowling, 855 F.2d 114, 120-21 (3 Cir.1988), cert. granted, --- U.S. ----, 109 S.Ct. 1309, 103 L.Ed.2d 579 (1989); United States v. Deerman, 837 F.2d 684, 690 (5 Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 146, 102 L.Ed.2d 118 (1988); United States v. Bennett, 836 F.2d 1314, 1316 (11 Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 2847, 101 L.Ed.2d 884 (1988); United States v. Gentile, 816 F.2d 1157, 1164 (7 Cir.1987). But see Flittie v. Solem, 775 F.2d 933, 942 (8 Cir.1985) ("collateral estoppel does not bar relitigation of facts that are evidentiary in the second prosecution"), cert. denied, 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986)
 
 
 [3]
 Accordingly, we find it unnecessary to determine whether the acquittal of charges arising from the 1979 arrest "necessarily determined" that Ricks did not possess narcotics at that time
 
 
 [4]
 The Court went on to state:
 In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and ... the affidavit's remaining [truthful] content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded....
 438 U.S. at 156, 98 S.Ct. at 2676.
 
 
 [5]
 It is well established that "series" means three or more violations. See Ricks, 776 F.2d at 463, n. 13 (collecting cases)
 
 
 [6]
 The evidence consisted of testimony from three individuals previously introduced at a separate trial of Meredith and others on unrelated conspiracy charges
 
 
 [7]
 Officer Ward was murdered by another drug dealer after the first trial. The government was permitted to introduce Ward's direct testimony pursuant to F.R.E. 804(b)(1) and 804(b)(5). The court gave King the option of admitting all or none of the cross-examination testimony
 
 
 [8]
 The government could not have independently introduced this "other bad acts" evidence under F.R.E. 404
 
 
 [9]
 The district court's ruling that King could exclude all of Ward's cross-examination testimony is consistent with this understanding of the rule
 
 
 [10]
 Rule 106 provides in relevant part that "[w]hen ... part [of a writing or recorded statement] is introduced by a party, an adverse party may require the introduction ... of any other part ... which ought in fairness to be considered contemporaneously with it." (emphasis added)
 
 
 [11]
 On the contrary, the record indicates that King sought to exclude large sections of Ward's cross-examination thereby increasing the likelihood that the portions to be introduced could not have been understood in context without additional testimony. Furthermore, the district court did excise a small portion of another witness' prior testimony in order to avoid undue prejudice, thus indicating the court's recognition that F.R.E. 106 is not a per se rule of inclusion
 
 
 [12]
 In Murphy v. Holland, 776 F.2d 470, 475 (4 Cir.1985), remanded for reconsideration on other grounds, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986), we counselled that "the wisest course for trial courts to take is to avoid defining reasonable doubt in their instructions unless specifically requested to do so by the jury." This limited exception to our general proscription in those cases where jurors are demonstrably confused or uncertain lends no support to appellants' argument
 
 
 [13]
 During the trial, Moffett also requested that his trial be severed from Ricks', but he has not pursued the point on appeal