930 F.2d 913
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marc L. BUTLER, a/k/a Juice, a/k/a Fat Boy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gwendolyn B. GOSLEE, Defendant-Appellant.
 Nos. 90-5631, 90-5632.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 10, 1991.
Decided April 18, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CR-89-356-A)
 John Yannone, Bowie, Md. (Argued), for appellant Butler; Eugene M. Zoglio, Bowie, Md., on brief.
 James Wayne Sprinkle, Portsmouth Va. (Argued), for appellant Goslee; John A. Rosenthall, Alexandria, Va., on brief.
 Nash Whitney Schott, Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and JOHN T. COPENHAVER, Jr., United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Marc L. Butler and Gwendolyn B. Goslee were convicted by a jury in the United States District Court for the Eastern District of Virginia of conspiracy to distribute cocaine and to possess with intent to distribute cocaine and "crack" cocaine, and Butler was also found guilty on six substantive drug and firearm counts. Both defendants now appeal several rulings made by the trial court. Finding no error below, we affirm.
 
 I.
 
 2
 On October 31, 1989, a federal grand jury for the Eastern District of Virginia returned a ten-count indictment charging Marc L. Butler and Gwendolyn B. Goslee with conspiracy to distribute cocaine and to possess with intent to distribute "crack" cocaine and cocaine, and related substantive offenses. Following a jury trial in the United States District Court for the Eastern District of Virginia, both defendants were convicted of the conspiracy charge, and defendant Butler was also convicted on six of the substantive counts. The court sentenced Goslee to seventy-eight months imprisonment and Butler to one hundred and thirty-eight months.
 
 
 3
 Gwendolyn Goslee, a Logistics Management Specialist for the Department of the Navy, resided with her four-year-old son in a condominium at 6063 A Essex House Square, Alexandria, Virginia. Around 1986, she became the girlfriend of Marc L. Butler. As evidence at trial clearly showed, Butler was a mid-level drug dealer in the Northern Virginia area. At some point, Butler began spending a good amount of time at Goslee's residence, taking with him clothes and important documents, and receiving mail there. Butler also brought with him the tools of his drug trade.
 
 
 4
 Beginning on August 29, 1989, undercover police officer Bill Kitzerow began making drug purchases from a Joseph Washington. Immediately after Kitzerow's initial purchase, police followed Washington to the Goslee residence and witnessed Washington go inside. This same series of events also occurred after Washington's next sale to Kitzerow, and thereafter police began a surveillance of the condominium. In so doing, the police observed on several occasions Washington visiting the Goslee residence just prior to a sale to Kitzerow, and returning there after the transaction was complete.
 
 
 5
 On October 4, 1989, Washington was arrested following a sale to Kitzerow. Shortly thereafter, police entered Goslee's condominium pursuant to a valid search warrant. Butler, who did not answer the door when the police knocked, was found hiding in the closet in Goslee's son's room. In addition, the police found in the apartment: a two-drawer file cabinet containing, among other things, a brown paper bag containing 40 to 50 screens (commonly used for smoking crack and/or marijuana) and 125 one dollar bills; a police scanner; a scratch pad with Butler's name and a price list for cocaine written on it; six handguns, five of which were loaded, and a loaded rifle; four propane tanks (commonly used for igniting crack); a brown purse belonging to Goslee which contained glass tubing, 41 plastic baggies with cocaine residue, screens, and baking soda; an open safe containing $4,551 in cash, two and one-half ounces of cocaine, 5.52 grams of crack, razor blades, inositol (a common adulterant used to "cut" cocaine), measuring spoons, over twenty one-half to one-gram clear plastic baggies, and an envelope Kitzerow had given to Washington on which the officer had written down several different amounts of cocaine he was interested in purchasing; a Metzler digital scale; an "owe" sheet reflecting the names of individuals who owed Butler money; a sophisticated beeper/pager known as a Metagram; a ledger of expense sheets belonging to Butler which showed, among other things, that between January and September 1989 he had paid "Gwen" $9,792 in differing amounts; and fourteen plastic baggies containing cocaine and crack located on Butler's person and in one of his jackets.
 
 
 6
 When Goslee returned home from work later in the day, she was also arrested. During the search incident to this arrest, police found in Goslee's purse a telephone address book. On the last page of this was a price list for different amounts of cocaine with the initials and name of two persons, "M.K." and "Dawn."
 
 
 7
 At trial, Joseph Washington testified for the government and described how Butler supplied him with the drugs. Also testifying, in her own behalf, was Goslee. She swore that although she was a drug user, she was not a distributor. Goslee testified that she had no idea that many of the items found in her condominium were there and that she remembered seeing some of the other items, such as the safe, but had no idea from where they had come. She also testified that the items found in her brown purse were for her own drug consumption and that the list found in her address book was her own comparison shopping list for purchasing drugs. Kitzerow, though, testifying for the government as an expert on the drug trade, opined that from his experience he believed the items in the purse were more likely those that a seller, not a casual user, of drugs would possess, and that the address book list was, in all probability, a seller's price list, denoting two customers and the prices they would pay.
 
 II.
 
 8
 Defendant Goslee's main argument on appeal is that there was insufficient evidence to show that a conspiracy actually existed, and even if a conspiracy did exist, there was insufficient evidence to show her participation in it. The relevant standard of review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Also, "[t]o sustain [a] conspiracy conviction, there need only be a showing that defendant knew of the conspiracy's purpose and some action indicating his participation." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied, 469 U.S. 1105 (1985).
 
 
 9
 At trial the government presented a great amount of evidence showing that an illicit agreement existed between Butler and Washington to sell cocaine; therefore we find meritless Goslee's contention that no conspiracy existed. In addition, in viewing the evidence most favorably to the government, we find that a rational trier of fact could reasonably conclude that Goslee knew of and aided her lover's drug operations.
 
 
 10
 Goslee's condominium was overflowing with drugs and drug paraphernalia that she allowed Butler to keep there. She admitted owning the brown purse and its contents relating to drug use, contents about which the government's expert testified that he believed were those a seller, not a casual user, would possess. Also, Goslee had on her person when arrested a cocaine price list which the government's expert identified as a seller's list. Further, Butler's expense sheets showed him paying "Gwen" $9,792 over nine months, with the payments being in various amounts. Finally, Goslee's own testimony at trial included several major inconsistencies, for example, despite claiming that the above list was her "comparative shopping list" for drugs, comparing the prices charged her by her two suppliers, Goslee also testified that she knew little about drugs, that she never bought over $200 worth at a time, and that when she wanted to make a buy, she would drive her flashy red Mercedes into a certain part of town and just wait for unknown drug dealers to approach her car. We find the evidence sufficient to have taken the question of Goslee's participation in the conspiracy to the jury.
 
 III.
 
 11
 Goslee also argues that the court erred when it denied her motion for a severance. "The decision of whether to sever a trial lies within the sound discretion of the trial court and will not be overturned absent a clear abuse of discretion." United States v. Ricks, 882 F.2d 885, 984 (4th Cir.1989), cert. denied, 110 S.Ct. 846 (1990). In addition, a district court's denial of a severance motion "will not be disturbed unless [it] deprives the defendants of a fair trial and results in a miscarriage of justice, ... or was so manifestly prejudicial that it outweighed the dominant judicial concern with judicial economy and compelled the exercise of the trial court's discretion to sever." United States v. Parodi, 703 F.2d 768, 780 (4th Cir.1983) (citations omitted).
 
 
 12
 The trial court ruled that since all the events occurred around Goslee's condominium and there appeared to be only one "series of events," separate trials were not warranted. Goslee contends, though, that she was unduly prejudiced because the evidence at trial was concentrated on the activities of Butler and Washington. However, we have held that "[a] showing that a defendant would have a better chance of acquittal in a separate trial does not establish prejudice sufficient to require severance." United States v. Roberts, 881 F.2d 95, 102 (4th Cir.1989). Here, the court instructed the jury to consider each defendant separately, and this instruction appears to have been followed--Goslee was acquitted on two of the three counts with which she was charged, counts on which Butler was convicted. As for the conspiracy count, there was substantial evidence against Goslee, at least showing that she knew of and acquiesced in Butler's use of her condominium as an operational base. We thus find that the district court did not clearly abuse its discretion in denying the motion for severance.
 
 IV.
 
 13
 Both Butler and Goslee object to the trial court's admission into evidence of the financial ledgers showing Butler's expenses. While Butler admits that the ledgers were both reliable and relevant, he complains that they were unnecessary and prejudicial. Goslee objects to them because they were prejudicial and supposedly contained heresay. The ledgers were admitted against Butler through Fed.R.Evid. 404(b), showing other crimes, wrongs, or bad acts to prove motive, preparation, plan, knowledge, absence of mistake, etc. While Butler admits their relevance, he says that they were prejudicial because they were unnecessary, given the amount of evidence the government already had to introduce. This ignores the fact, though, that part of Butler's defense was that Joseph Washington, not Butler, was the mastermind behind the conspiracy--the ledger evidence certainly helps to disprove this. As for Goslee, the evidence helped show that she was a part of the drug distribution conspiracy, and thus any hearsay argument she has is defeated by Bourjaily v. United States, 483 U.S. 171, 180-82 (1987); United States v. Jackson, 863 F.2d 1168, 1171-72 (4th Cir.1989). We find that the trial court did not abuse its discretion in admitting the ledger evidence.
 
 V.
 
 14
 Finally, Butler contends that his one count of conviction under 18 U.S.C. Sec. 924(c)(1) was in error, because there was insufficient evidence to prove that he used or carried a firearm during and in relation to his drug trafficking crime. When the police searched Goslee's apartment, though, they discovered seven weapons, six of which were loaded. Underneath a desk in the master bedroom was an open cardboard box containing two .44 magnum and two .9 millimeter handguns. Also, in the open in the master bedroom closet were found a .9 millimeter handgun, a .357 magnum handgun, and a Remington 12-gauge shotgun.
 
 
 15
 To be convicted under section 924(c)(1) a "weapon need not be brandished or displayed. Rather, 'it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used.' " United States v. Paz, --- F.2d ---- (4th Cir. Mar. 4, 1991), quoting United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). In Paz, we held that evidence of one .9 millimeter handgun found loaded underneath a mattress in a room containing cocaine was sufficient to convict under section 924(c)(1). --- F.2d at ----. Likewise, here, we find that our evidence--six handguns and one shotgun, all easily accessible and all but one loaded, discovered in an apartment used for drug production, distribution, and storage--was sufficient to take the section 924(c)(1) count to the jury. Butler also objects to the jury instruction concerning this count, but this instruction was not objected to at trial, and we find that it in no way rises to the level of plain error.
 
 
 16
 Accordingly, as defendants here have given us no reason to overturn the trial court's determination of the case below, the convictions of Butler and Goslee are
 
 
 17
 AFFIRMED.