946 F.2d 888
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael OSAMOR, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ahmed Tijani YESUFU, Defendant-Appellant.
 Nos. 89-5445, 89-5459.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1991.
Decided Oct. 18, 1991.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Norman P. Ramsey, District Judge. (CR-89-32-R)
 Argued: William Nelson Butler, Howard & Melfa, P.A., Towson, Md., for appellant Yesufu; Beth M. Farber, Assistant Federal Public Defender, Baltimore, Md., for appellant Osamor; John Francis Purcell, Jr., Assistant United States Attorney, Baltimore, Md., for appellee.
 On Brief: Fred Warren Bennett, Federal Public Defender, Stephen J. Cribari, Deputy Federal Defender, Susan Evelyn Grab, Third Year Law Student, Baltimore, Md., for appellant Osamor; Breckinridge L. Willcox, United States Attorney, Billy S. Bradley, Assistant United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Criminal defendants Michael Osamor and Ahmed Tijani Yesufu appeal their convictions based on two issues: (1) did the district court abuse its discretion in denying defendants' motion for severance; and (2) was there sufficient evidence presented at trial for the jury to find the defendants guilty beyond a reasonable doubt? Finding neither an abuse of discretion nor insufficiency of evidence, we affirm.
 
 I.
 
 2
 On January 25, 1989, the grand jury for the District of Maryland returned a two count indictment jointly charging Michael Osamor and Ahmed Tijani Yesufu with conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841. The criminal conduct with which the defendants were charged occurred on or about January 10, 1989.
 
 
 3
 Osamor filed a motion for severance and several other motions. Yesufu filed a motion for severance as well. On May 12, 1989, Judge Ramsey denied both motions for severance. On May 26, 1989 Osamor and Yesufu were convicted of both of the charged offenses.
 
 
 4
 On August 10, 1989, Osamor was sentenced to a term of imprisonment of 41 months on counts 1 and 2, to be served concurrently. In addition, he was sentenced to a term of supervised release for three years upon the completion of his incarceration and ordered to pay a special assessment of $100.00. On the same day, Yesufu was sentenced to a term of imprisonment of 78 months on counts 1 and 2, to be served concurrently. In addition, upon completion of his term of incarceration he was to serve a term of supervised release of three years and was ordered to pay a special assessment of $100.00. Osamor and Yesufu filed timely appeals.
 
 II.
 
 5
 The crucial evidence of these drug convictions, as it relates to the only two assignments of error, for the most part, consists of the testimony of two government witnesses and both defendants. The facts will be recounted from the perspectives of the government and the defense.
 
 A.
 
 6
 The government used Washington, D.C. Officer Don Scott and Drug Enforcement Agent John Cornille to present the basic chain of events that led to the arrests of Osamor and Yesufu. For the sake of clarity, their evidence is recounted in chronological order.
 
 
 7
 In early January, 1989, a confidential informant supplied the Drug Enforcement Administration with information that an individual named "Michael" had 100 grams of heroin to sell for $15,000.00. Officer Scott met with Osamor, known then only as "Michael," in the bar of the Ramada Inn in Lantham, Maryland where they were introduced by the DEA informant. Scott and Osamor had a conversation about the sale of heroin. Following an inquiry by Scott, Osamor stated that my man has "the stuff." The two men moved to the bar to sit with a man introduced to Scott by Osamor as "my man Ahmed (Yesufu)." Osamor indicated that he and Yesufu had to get the drugs and both men then left the bar area. Yesufu returned. Scott attempted to have Yesufu show him the heroin in the bathroom of the hotel. While in the rest room, Yesufu apparently received at least some of the money; he even tested the bills to determine if they were counterfeit by rubbing them with tissue. He nevertheless refused to show Scott the heroin. After Scott threatened to call off the deal, Yesufu agreed to let Scott see the drugs outside. Outside of the hotel front door, Yesufu revealed to the officer an egg-shaped container. Upon seeing the container, Scott reentered the hotel and Cornille gave the signal to begin making the arrests.
 
 
 8
 When Cornille moved to arrest Yesufu, the defendant placed his hands in his pockets and began to move away from the agent. Yesufu removed a container from his pocket and dropped it on the ground. Cornille instructed Sergeant Bobbie Parker of the Washington police department to retrieve the container. When Parker field tested the substance in the container; it tested positive for the presence of opiates. The parties stipulated at trial that the contents of the container were 99.8 grams of a compound of which 77 percent was heroin hydrochloride.
 
 B.
 
 9
 According to Osamor, in late December 1988, he and Yesufu discussed the possibility of engaging in a narcotics transaction. At a New Year Eve's party in 1988, Osamor and Yesufu talked about narcotics again. Yesufu introduced Osamor to a fellow named "Teddy." Teddy, in turn, contacted a person named "Matthew" to make arrangements for the transaction.* Matthew was a government informant who informed the Washington police that he had a "source" who wanted to sell a quantity of heroin.
 
 
 10
 On January 10, 1989, arrangements were made for a transaction to take place in the bar area of the Ramada Inn. Osamor and Yesufu caught a cab, asked the driver to wait for them, and entered the hotel. Matthew, Osamor, and Scott sat at a table together. Yesufu was already sitting at the bar. Osamor told Matthew while they were discussing the sale of heroin that he did not have the drug and would have to get it. Osamor left the hotel with Yesufu. At that point, he told Yesufu, "This is not right, let's forget about this thing, for Christ's sake, let's get out of here." Yesufu returned to the bar, while Osamor waited in the cab. Osamor remained in the cab out of a sense of loyalty to his friend. Moreover, Osamor lacked cab fare home. He was subsequently arrested.
 
 C.
 
 11
 Yesufu claims, on the other hand, that he knew that he and Osamor were going out on January 10. He did not, however, know where they were going or why. After entering the Ramada Inn, Osamor introduced Yesufu as "my man." Osamor talked to Matthew and suggested that Yesufu speak with Officer Scott. Matthew, Osamor, and Yesufu left the hotel together.
 
 
 12
 Yesufu walked to the cab that was waiting for him and Osamor. At that point, Osamor informed Yesufu that he was "going to the loss [rest room]". Osamor then grabbed Yesufu's coat and slipped something into the jacket pocket. Yesufu did not know what the package was. Presumably, this package was the container of heroin.
 
 
 13
 Officer Scott followed Yesufu to the bathroom. Scott placed money in the sink. Being fascinated by the money, he picked up one of the $100.00 bills, examined it out of curiosity, and dropped it. He did not, as the government contends, rub the bill with tissue to determine whether it was counterfeit. While in the bathroom Yesufu never spoke to Scott.
 
 III.
 
 14
 The joinder of criminal defendants is appropriate under Rule 8(b) of the Federal Rules of Criminal Procedure, "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). As Yesufu and Osamor were jointly charged in the indictment with conspiracy to possess with intent to distribute heroin, it would appear at the threshold of inquiry that joinder was appropriate.
 
 
 15
 The rules do, however, recognize an instance where joinder is inappropriate. Rule 14 states that the court may grant a severance "if it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants ..." Fed.R.Crim.P. 14. The rule imposes on the district court an ongoing duty at all stages of the trial to grant a severance if the requisite degree of prejudice appears. United States v. Spitler, 800 F.2d 1267, 1273 (4th Cir.1986). Moreover, the decision of whether to sever a trial lies within the sound discretion of the trial court and will not be overturned without a clear abuse of discretion. Id. at 1271-72.
 
 
 16
 In this circuit the required degree of prejudice is that which denies the defendant a fair trial. United States v. Ricks, 882 F.2d 885, 894 (4th Cir.1989). Furthermore, the mere existence of antagonistic defenses among defendants is not enough to require individual trials. Spitler, 800 F.2d at 1271-72. The conflict among those defenses must be so prejudicial that the defendant would be denied a fair trial if tried jointly with his co-conspirators. Id.
 
 
 17
 A number of other circuits have recognized that the presentation of antagonistic defenses among codefendants may warrant severance. The District of Columbia, Second, and Eighth Circuits have held that such defenses must be so antagonistic as to be irreconcilable, United States v. manner, 887 F.2d 317, 326 (D.C.Cir.1989), cert. denied, 110 S.Ct. 879 (1990); United v. Tutino, 883 F.2d 1125, 1130 (2d Cir.1989), cert. denied, 110 S.Ct. 1139 (1990); and United States v. Davis, 882 F.2d 1334, 1341 (8th Cir.1989), cert. denied, 110 S.Ct. 1472 (1990). The Tenth Circuit has held that defenses that merit severance must be mutually exclusive, United States v. Peveto, 881 F.2d 844, 857 (10th Cir.1989).
 
 
 18
 Under the Spitler standard the defenses offered by Osamor and Yesufu fail. More generally, the defenses are not irreconcilable or mutually exclusive.
 
 
 19
 Osamor's defense is essentially that he had a change of heart; while Yesufu's defense is that he did not know what was going on. Accepting Osamor's story as true, his sudden change of heart was not enough to nullify his participation in the conspiracy. Osamor admitted to traveling to the hotel, but upon changing his mind he decided to sit in the cab and await the completion of the deal. In the Fourth Circuit:
 
 
 20
 The defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action. Withdrawal must be shown by evidence that the defendant acted to defeat or disavow the purposes of the conspiracy
 
 
 21
 United States v. West, 877 F.2d 281, 289 (4th Cir.), cert. denied, 110 S.Ct. 195 (1989). Osamor's statement to Yesufu to "forget this thing," made prior to waiting for the completion of the deal, could be reasonably understood as not an "act" to disavow or defeat the conspiracy, but rather a panic-ridden comment. If this story is taken as true, it does not necessarily conflict with Yesufu's version. Osamor admits to the crime but says he had second thoughts. Yesufu contends that he had no idea that there was a crime occurring. Yesufu's story of not knowing where he was going or why, having a package placed in his coat without his examining its contents, and examining money being dumped in a lavatory sink out of fascination is fanciful. The stories are not irreconcilable, mutually exclusive, or so prejudicial as to deprive either defendant of a fair trial; thus, the severance arguments fail.
 
 IV.
 
 22
 Addressing the sufficiency of evidence claim, the standard of review requires that the evidence be viewed in the light most favorable to the government to determine whether any rational trier of fact could have found proof of the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under such a standard the evidence is sufficient. These convictions are affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The facts of the case do not reveal the identity of Teddy, other than his role in setting up the drug transaction