949 F.2d 396
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy Jerome LUKE, Defendant-Appellant.
 No. 91-5150.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1991.
Decided Dec. 11, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Robert J. Staker, District Judge. (CR-90-256-2)
 Argued: Hunt L. Charach, Charleston, W.Va., for appellant; Larry Robert Ellis, Assistant United States Attorney, Charleston, W.Va., for appellee.
 On Brief: Edward H. Weis, Assistant Federal Public Defender, Charleston, W.Va., for appellant; Michael W. Carey, United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-appellant Luke was convicted of bank fraud in violation of 18 U.S.C. § 1344 (1990). He appeals the sufficiency of the indictment, jury selection, admission of certain items of evidence, and two jury instructions. For the reasons stated herein, the district court is affirmed.
 
 I.
 
 2
 The government's evidence at trial established that Luke was involved with another unknown person in a bank fraud scheme which operated in the following fashion. The unknown accomplice opened accounts at two banks in Charleston, West Virginia, into which bogus checks purporting to be drawn on an account of the Indiana Insurance Company were deposited. One such account at the National Bank of Commerce of Charleston was opened as a business account in the name of "Marketel Communications." The bogus checks were printed by the New England Business Service (NEBS). Records of NEBS showed that the bogus Indiana Insurance Company Checks were made by NEBS pursuant to an order placed in the spring of 1990 and delivered to 1087 Miller Street, Columbus, Ohio. The checks initially appeared legitimate to the recipient banks. Funds were then withdrawn from the accounts and used to purchase cars and clothes. The money was also used for travel and other expenses.
 
 
 3
 Defendant was tied into this scheme primarily through the testimony of Melanie Jacobs and Harold Davis. Defendant met Jacobs in August of 1990 shortly after which time he asked her to allow him to use space in her apartment located at 1545 Lewis Street in Charleston to store and use various pieces of office equipment including an electronic typewriter, a dot matrix printer, and related paraphernalia. Jacobs testified that defendant told her that he used these pieces of equipment to "get money out of banks" but that he never went into the banks himself. Defendant also asked Jacobs to receive and sign a fictitious name for packages which would be delivered to her apartment. In the following two days, Jacobs received and signed a fictitious name for two packages. Defendant subsequently displayed to Jacobs the contents of these packages which contained blank checks purporting to be on an "FMC" account and on an account of Aetna Insurance Company.* Jacobs also testified that defendant used a piece of equipment he referred to as a demagnetizer which he ran back and forth over the surface of another set of checks he brought to her apartment.
 
 
 4
 Harold Eugene Davis, a sometimes suitor of Jacobs, was suspicious of these events and took the liberty of searching through the equipment and the envelopes after their arrival. He testified that there were two boxes of checks, one containing checks on an "FMC" account and the other containing checks on another account as well as a number of checks on an account of the Indiana Insurance Company.
 
 
 5
 Jacobs and Davis both testified that they saw defendant and the unidentified accomplice driving a Lincoln Town Car and a Toyota MR-2, both purchased with fraudulent checks drawn on the Charleston banks. Jacobs further testified that, not long before defendant was caught, he drove with her to an automatic teller machine in an attempt to withdraw money from one of the accounts, but the machine kept defendant's card. Jacobs testified that defendant stated at this point that he knew it was time for him to leave. The two left for Columbus, Ohio, and remained there for two days. Upon returning from this trip, defendant and Jacobs found that her apartment had been searched and the equipment seized. Defendant made quick preparations for another departure in response.
 
 
 6
 Defendant was indicted on September 27, 1990, by a federal grand jury sitting in Charleston, West Virginia. Later that day in Columbus, Ohio, law enforcement officers saw defendant emerge from the residence at 1087 Miller Street, the same address to which many of the bogus checks, including those of the Indiana Insurance Company, had been sent. These officers subsequently approached defendant while stopped at a stop light in the Toyota MR-2 in an effort to arrest him. Defendant fled causing a high speed chase through the city of Columbus. When apprehended, he offered the arresting agent false identification.
 
 
 7
 At trial, the district court conducted voir dire of the jury panel, one member of which was Michael Johnson, a black male. The panel was asked during voir dire whether any member of the panel or any relative or close personal friend had ever been charged with or convicted of a crime. The panel was also asked whether any of them had been involved in any "conflict, controversy, or litigation with the United States Attorney's Office or the Federal Bureau of Investigation." Further, the panel was asked whether any member had had any "dealings with the U.S. Department of Justice or the U.S. Attorney's Office for the Southern District of West Virginia." Johnson did not respond to any of these questions. In a subsequent in camera hearing of the government's motion to have Johnson struck for cause, Johnson admitted that he had been previously tried for failure to appear for jury duty on five separate occasions and that he had been prosecuted by the U.S. Attorney's Office. The district court granted the government's motion.
 
 
 8
 During the trial, the district court allowed into the record evidence concerning other occurrences similar to that presently at issue. The evidence was introduced in the form of testimony from the NEBS official as to sets of checks which NEBS had printed and sent to the Columbus, Ohio, address near which defendant was seen on the day of his arrest. Finally, the trial court instructed the jury on the issues of flight and false identification.
 
 II.
 
 9
 Defendant first raises an issue concerning the sufficiency of his indictment. The government concedes that the indictment against defendant did not use the term "knowingly" to describe defendant's involvement in the purported scheme. 18 U.S.C. § 1344 (1990) requires that the scheme be executed "knowingly." 18 U.S.C. § 1344 provides:
 
 
 10
 Whoever knowingly executes, or attempts to execute, a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both.
 
 
 11
 The relevant precedent on this issue is Finn v. United States, 256 F.2d 304 (4th Cir.1958). Where a post-verdict challenge relates to the absence of an element, the indictment will be held sufficient if it contains "words of similar import," that is, where the element may be found by a fair construction of the charging language. Id. at 306.
 
 
 12
 Defendant argues that, though one can infer from the remaining part of the indictment that the grand jury found Luke knew that some of the representations were falsely made, e.g. that 'John Doe' [the unknown accomplice] falsely represented himself when opening the accounts, the indictment does not demonstrate that 'John Doe' was executing a scheme to defraud when he made the false representations. Thus, counsel attempts to distinguish knowledge of the specific events of the fraud from knowledge of the entire scheme.
 
 
 13
 Defendant's argument does not sway the Court. First, the indictment alleges that the unknown accomplice "acted in collaboration with and at the direction of" the defendant. Second, the indictment further alleges that defendant created the forged checks and directed the accomplice to deposit them into the accounts. Third, each of the indictments alleges that all withdrawals from the accounts were made at defendant's direction. Defendant could not have conducted himself in this fashion unknowingly, and a fair construction of the language of the indictment so indicates. The language of the indictment thus satisfies the requirements of Finn.
 
 III.
 
 14
 Defendant next challenges the decision of the trial court to excuse juror Michael Johnson for cause. Because Johnson was the only black member of the jury pool and defendant is a black man, defendant argues that Johnson's removal for cause affects his interest in a jury selected from a fair cross section of the community. Witherspoon v. Illinois, 391 U.S. 510 (1968).
 
 
 15
 This Court has recognized the doctrine of implied bias whereby it may be presumed that a prospective juror is likely biased if the relationship between that juror and some aspect of the case is "such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." Person v. Miller, 854 F.2d 656, 664 (4th Cir.1988). In the instant case, Johnson was excused for cause because he had only two months earlier been prosecuted for failure to appear for a jury summons by the same U.S. Attorney's office now prosecuting defendant in this case. Despite Johnson's statement that he could remain impartial, it appears highly unlikely to this Court that Johnson could have remained impartial under these circumstances just as it apparently seemed to the district court. As the Supreme Court stated in Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981), the trial judge "must reach conclusions as to impartiality and credibility by relying on [his] own evaluations of demeanor evidence and of responses to questions." [Citations omitted]. "[A]n appellate court [cannot] easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses." Id. The district court did not abuse this broad grant of discretion in removing Johnson.
 
 IV.
 
 16
 Defendant next challenges the admission of certain evidence concerning similar occurrences in which checks fraudulently drawn on companies other than those involved in this case were sent to the same address in Columbus, Ohio, near which defendant was seen on the day of his arrest. Defendant also challenges the admission of the testimony of a BancOhio National Bank representative concerning attempted uses of a teller machine to withdraw the fraudulently created balances and pictures of defendant made at the machine corresponding to those withdrawals.
 
 
 17
 Regarding the NEBS representative's testimony, defendant complains that this evidence was highly and unfairly prejudicial because there was no evidence conclusively linking defendant to that address or to those checks. Defendant argues that Jacobs and Davis both had access to the business machines used to counterfeit the checks, and no handwriting or fingerprint evidence was introduced.
 
 
 18
 Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs, or acts may be admissible for purposes such as proof of plan or scheme, knowledge, or identity. See United States v. Haney, 914 F.2d 602 (4th Cir.1990). Defendant was observed near the Columbus, Ohio, address on the day of his arrest thus establishing sufficient connection between him and that location to allow this evidence before the jury to show a plan or scheme of defrauding banks on an ongoing basis.
 
 
 19
 Defendant complains next of evidence introduced regarding the use of the teller machines. William Litzenburger of BancOhio National Bank testified concerning bank records showing attempted withdrawals from the fraudulent accounts which were matched in time against pictures taken of defendant attempting to use the automatic teller machines. Defendant claims that the bank representative never testified that he was the authorized custodian of the records or that they were the regularly kept records of the bank pursuant to the business records exception of the hearsay rule.
 
 
 20
 Rule 803(6) of the Federal Rules of Evidence provides that the following will not be excluded from evidence under the hearsay rule:
 
 
 21
 A memorandum, report, record, or data compilation ... of ... events ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum ..., all as shown by the testimony of the custodian or other qualified witness....
 
 
 22
 It is clear from the testimony of Mr. Litzenburger that the elements of the exception were fulfilled. The bank was obviously a business, and the witness testified that he had worked as an investigator for the bank in matters such as these for twenty-four years. When defense counsel objected to the evidence, the trial court ascertained that the records were those of the bank and that the witness had been senior fraud investigator for thirteen years. Further, defense counsel crossexamined the witness on the issues of his familiarity with the records and the operation of the teller machine and the camera located therein. The business records exception was satisfied under these circumstances.
 
 V.
 
 23
 The final issue defendant appeals concerns the trial court's instructions offered to the jury concerning flight and the use of false identification. The trial court instructed the jury that evidence of flight and intentional misrepresentation of identity may show consciousness of guilt. Defendant argues that there was no evidence presented that he knew he had become a suspect in a police investigation, that he knew he had been indicted, or that he knew that the FBI was seeking him in connection with this offense.
 
 
 24
 With regard to the instruction on flight, this Court has held that, where the evidence supports a chain of inferences leading from the evidence of flight to consciousness of guilt of the crime charged, such an instruction is proper. United States v. Porter, 821 F.2d 968 (4th Cir.1987), cert. denied, 485 U.S. 934 (1988). See also United States v. Hawkes, 753 F.2d 355 (4th Cir.1985). Though defendant claims that he had no knowledge of the suspicions of the law enforcement authorities regarding his role in this crime, the testimony of Jacobs points to a different conclusion. Defendant told Jacobs that he knew it was time for him to leave when the teller machine kept his card, and defendant quickly left town when he learned that Jacob's apartment had been searched. It can be reasonably inferred from this testimony that defendant was aware of the suspicions of the FBI. An instruction on flight was, therefore, appropriate. As for the false identification instruction, this Court has indicated that evidence of a defendant's post-offense use of a false name or false identification may be relevant as evidence on consciousness of guilt. United States v. Vogt, 910 F.2d 1184 (4th Cir.1990), cert. denied, 111 S.Ct. 955 (1991). Defendant again argues that the evidence does not lead to the inference that he was conscious of guilt for this crime. We note that the testimony of Jacobs as well as defendant's attempt to flee when confronted by the FBI point to a different conclusion, a conclusion which the jury found believable in convicting defendant of the crime charged.
 
 
 25
 For the reasons stated herein, the rulings and judgment of the district court are hereby
 
 
 26
 AFFIRMED.
 
 
 
 *
 At trial, a representative of NEBS presented a summary chart, based on the records of NEBS, showing that the checks delivered to Melanie Jacobs' apartment were also ordered from and shipped by NEBS