956 F.2d 1163
 35 Fed. R. Evid. Serv. 402
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William J. JORDAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William J. JORDAN, Defendant-Appellant.
 Nos. 90-5623, 90-5624.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1991.
Decided March 3, 1992.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., Senior District Judge. (CR-88-391, CR-89-117)
 Argued: Mark L. Archer, Charleston, S.C., Louis H. Lang, Callison, Tighe, Robinson & Anastasion, Columbia, S.C., for appellant; Robert Hayden Bickerton, Assistant United States Attorney, Charleston, S.C., for appellee.
 On Brief: E. Bart Daniel, United States Attorney, Charleston, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before K.K. HALL, WILKINS and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this consolidated appeal, William J. Jordan contests his convictions returned in two trials. In the first trial, Jordan was convicted of one count of conspiracy to distribute cocaine and two counts of distribution of cocaine. In the second trial, Jordan was convicted of one count of conspiracy to distribute cocaine and one count of distribution of cocaine. He contends that reversal is required in the first trial because the district court erred in admitting into evidence testimony of prior bad acts committed by him. Jordan also maintains that the district court subjected him to double jeopardy by improperly denying his motion for acquittal in his first trial and his motion to quash in his second trial. Finding no error, we affirm both convictions.
 
 I.
 
 2
 The evidence presented during the first trial, related here in the light most favorable to the Government, see Glasser v. United States, 315 U.S. 60, 80 (1942), revealed that Jordan and Raymond Simonin were long-time acquaintances. In April 1986, Simonin agreed to store cocaine for Jordan at his North Charleston, South Carolina home in exchange for money and small quantities of cocaine. Simonin testified that between April and November of 1986, Jordan delivered approximately eight kilograms of cocaine to Simonin's home. Jordan, and later Simonin acting under Jordan's direction, sold the cocaine in ounce quantities to James Miller, Paul Simmons and others. In mid1987, Simonin and Jordan came into contact with a mutual friend, John Everett, who later purchased two ounces of cocaine from Jordan. A jury returned a guilty verdict on one count of conspiracy to distribute seven kilograms of cocaine between April 1986 and November 1986, 21 U.S.C.A. § 846 (West Supp.1991), and two counts of distribution, 21 U.S.C.A. § 841(a)(1) (West 1981). Jordan received a sentence of ten years imprisonment.
 
 
 3
 John Everett was the primary witness for the Government at the second trial. He testified that several months after he purchased the two ounces of cocaine, he received a telephone call from Jordan who explained that he had relocated to Miami, Florida because Simonin had become a government informant. Everett stated that from September 1987 to June 1988, he purchased approximately ten kilograms of cocaine from Jordan. In June 1988, authorities arrested Everett and Jordan. In his possession, Jordan had an application for a Tennessee driver's license and a social security card, both in the name of Willie Robert Smith. A jury found Jordan guilty of one count of conspiracy to distribute eight and one-half kilograms of cocaine between November 1987 and June 1988, 21 U.S.C.A. § 846, and one count of distribution, 21 U.S.C.A. § 841(a)(1). Sentenced as a career offender, Jordan received a sentence of 360 months to run concurrently with the sentence imposed in the first trial.
 
 II.
 
 4
 At the first trial the Government introduced, over Jordan's objections, evidence of prior bad acts committed by Jordan, including testimony concerning Jordan's prior relationship with Simonin and Everett involving the use and sale of marijuana and cocaine and Jordan's arrest for involvement in a large marijuana sale in 1982. The district court also admitted the documents bearing a false name found in Jordan's possession at his arrest. Jordan contends that because he announced prior to trial that he would not testify or present evidence, admission of this evidence amounted to an unnecessary attack on his character. He maintains that admission of the evidence violated Federal Rule of Evidence 404(b) because it was irrelevant, unnecessary, and unreliable. The volume and duplicity of the evidence, he argues, prevented the district court from properly weighing its probative value against its prejudicial effect.
 
 
 5
 Rule 404(b) prohibits admission of evidence of bad acts "solely for the purpose of establishing the defendant's bad character." United States v. Haney, 914 F.2d 602, 607 (4th Cir.1990). Such evidence may be admissible, however, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Although Jordan announced prior to trial his intention not to testify, by entering a plea of not guilty Jordan put the Government to its burden of proving knowledge and intent, elements it was required to prove in order to establish commission of the charged offenses, see United States v. Mark, 943 F.2d 444, 448 (4th Cir.1991).
 
 
 6
 To be properly admissible under Rule 404(b), evidence must be necessary, reliable, and "relevant to an issue other than character." United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). An understanding of Jordan's relationship with Everett and Simonin, particularly Jordan's use of Simonin as a shield to insulate himself from the risks of narcotics activity, was necessary in order to establish the context in which the offenses were committed, see United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980). Evidence of the 1982 marijuana arrest disclosed Jordan's intent and knowledge of the negotiations and logistics involved in large-scale narcotics purchases, see United States v. King, 768 F.2d 586, 588 (4th Cir.1985) (per curiam). Similarly, the district court properly admitted the documents showing false identification because proof of carrying false identification following the commission of a crime is germane to consciousness of guilt, see United States v. Horton, 873 F.2d 180, 181 (8th Cir.1989) (per curiam).
 
 
 7
 The district court repeatedly took precautionary measures that sufficiently overcame any prejudice that may have existed, see United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). At a pretrial hearing, the court excluded some evidence of bad acts as too prejudicial. During trial the court halted a witness's testimony, deeming it too prejudicial, and immediately instructed the jury to draw no inferences from the restrictions placed on the questioning of the witness. In its charge to the jury, the court instructed that evidence of bad acts did not constitute direct proof that Jordan committed the crimes charged in the indictment.
 
 
 8
 The decision of the district court to admit evidence pursuant to Rule 404(b) lies within its discretion and will not be disturbed unless "it is an arbitrary or irrational exercise of discretion." Id. We find no abuse of discretion in the ruling of the district court to admit this evidence.
 
 III.
 
 9
 Jordan contends that he has been subjected twice to violations of his rights protected by the Double Jeopardy Clause. U.S. Const. amend. V, cl. 2. In the first trial, he was convicted of two counts of distribution of cocaine; Jordan argues that these counts involved the same cocaine and that the district court therefore improperly denied his motion for acquittal. Further, Jordan was convicted of one count of conspiracy in each trial. Maintaining that only one conspiracy existed, Jordan asserts that the second trial subjected him to double jeopardy. We address each of these contentions in turn.
 
 
 10
 Jordan argues that the two counts of distribution in the first trial involved the same cocaine and therefore the Government has "impos[ed] more than one punishment for something the legislature has defined as a single crime," United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir.1988). In essence, Jordan attacks the sufficiency of the evidence to support the conclusion that the counts involved separate quantities of cocaine. Viewing the facts in a light most favorable to the Government, see Glasser, 315 U.S. at 80, we find that Simonin's testimony concerning quantities of cocaine delivered and distributed by Jordan between April and November 1986 clearly constitutes sufficient evidence to support separate convictions on both counts of distribution in the first trial.
 
 
 11
 In Jordan's second claim of double jeopardy, he maintains that the conspiracy alleged in the first trial continued from April 1986 until June 1988, thus encompassing the time span for the conspiracy asserted in the second trial. Although Jordan acknowledges that the Government alleged a different conspiracy at each trial and offered different evidence in support of each claim, he argues that because one conspiracy existed, his conviction and punishment in the second trial applies to the same conduct for which he was found guilty in the first trial. We have recognized that the Double Jeopardy Clause "clearly prohibits the division of a single criminal conspiracy into multiple violations of a conspiracy statute." United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir.1986). In evaluating double jeopardy claims involving conspiracies, we consider:
 
 
 12
 1) time periods in which the alleged activities of the conspiracy occurred; 2) the statutory offenses charged in the indictments; 3) the places where the alleged activities occurred; 4) the persons acting as co-conspirators; and 5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.
 
 
 13
 Id.
 
 
 14
 Our review of the record discloses Jordan's involvement in separate and distinct conspiracies occurring over different periods of time and involving different cocaine and participants. Jordan operated the first conspiracy from a Charleston base and the second from Miami. The first conspiracy revolved around Simonin, Miller and Simmons; Jordan worked exclusively with Everett in the second. Jordan occupied a different role in each conspiracy. In the first, he purchased large quantities of cocaine and controlled its subsequent distribution in smaller amounts; in the second, he sold large quantities of cocaine to Everett and had no influence over subsequent sales. Although Jordan asserts that the Government failed to meet its burden to prove that the first conspiracy ended, the evidence indicates that Simonin's decision to become an informant, Miller's arrest, Jordan's relocation from Charleston to Miami, and his relationship with Everett effectively terminated the first conspiracy. Consequently, we conclude that Jordan's rights under the Double Jeopardy Clause of the Fifth Amendment were not violated.
 
 IV.
 
 15
 Jordan also claims that the district court improperly instructed the jury regarding use of an alias. This issue is without merit. Accordingly, we affirm Jordan's convictions.
 
 
 16
 AFFIRMED.