977 F.2d 574
 36 Fed. R. Evid. Serv. 1394
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jackie Lee TREADWELL, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Craig Lewis TREADWELL, a/k/a Greg Treadwell, Defendant-Appellant.
 Nos. 91-5348, 91-5349.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: March 20, 1992
Decided: October 20, 1992
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville.
 Robert D. Jacobson, Lumberton, North Carolina; Louis Jordan, Goldsboro, North Carolina, for Appellants.
 Margaret Person Currin, United States Attorney, Robert D. Potter, Jr., Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER, HALL, and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jackie Lee Treadwell and Craig Lewis Treadwell appeal their convictions for conspiracy to commit bank robbery in violation of 18 U.S.C.A. §§ 371 (West 1966) and 2113(a) (West Supp. 1991), aiding and abetting a bank robbery through the use of a dangerous weapon in violation of 18 U.S.C.A. §§ 2 (West 1969), 2113(a) and 2113(d) (West 1984 & Supp. 1991), and aiding and abetting the use of a firearm during a crime of violence in violation of 18 U.S.C.A. §§ 2 (West 1969) and 924(c)(1) (West Supp. 1991). They argue on appeal that the district court erred in admitting evidence of their prior robberies and evidence of a post-offense conversation, that the evidence was insufficient, and that the district court erred in denying Craig Treadwell's Motion for Mistrial, in light of the inattentiveness of one juror. Jackie Treadwell also challenges the district court's refusal to award him a downward departure at sentencing for his minor or minimal role in the offenses. We affirm.
 
 I.
 
 2
 The Treadwell brothers carried out the offenses with the help of coconspirator Bobby Joe Dixon. They first met Dixon in the spring of 1990 and, after learning that Dixon was involved in burglary, expressed an interest in committing a crime with him. Soon thereafter while they were stopped at a convenience store in Mount Olive, North Carolina, Craig Treadwell dared Dixon to rob the store. When Dixon agreed, Jackie Treadwell gave him a handgun. Dixon then robbed the store and met the Treadwells at a nearby supermarket before they fled the area. The threesome proceeded to a pawn shop in nearby Warsaw, North Carolina, where Craig Treadwell showed Dixon guns that he wanted to steal. Later that evening, Jackie Treadwell accompanied Dixon to Warsaw, established a post-robbery meeting place, and waited while Dixon robbed the store.
 
 
 3
 Approximately one week later, Craig Treadwell approached Marvin Boykin, an acquaintance, and attempted to recruit him to assist with a credit union robbery. Boykin refused to become involved. Craig Treadwell also invited Dixon to participate in the credit union robbery. Dixon agreed and all three drove to the State Employees Credit Union in Clinton, North Carolina, where Craig Treadwell instructed Dixon on how to carry out the robbery. As with the previous robberies, Dixon was to act as the trigger-man while the Treadwell brothers would provide transportation to and from the crime scene. Two days later, Craig Treadwell accompanied Dixon to Clinton, gave him a jogging outfit to wear during the planned robbery, a trash bag to carry the proceeds, and his .45 caliber semi-automatic pistol. They first attempted to steal a car, but were unsuccessful. They then interrupted their plans and drove to Jackie Treadwell's place of employment. Craig Treadwell spoke with Jackie briefly and picked up a set of keys. Craig Treadwell and Dixon then successfully stole a car from a local Roses parking lot, which Dixon drove to the credit union after establishing a post-robbery meeting place.
 
 
 4
 Dixon twice attempted to rob the credit union. The first time he became frightened and left after being told that he did not qualify for membership in the credit union and thus could not get a loan (the robbery plan involved requesting a loan application for purposes of drawing the teller away from the counter). After speaking with Craig Treadwell, Dixon agreed to attempt the robbery again but saw an unmarked police car in the parking lot before entering the credit union and changed his mind.
 
 
 5
 Craig Treadwell then suggested robbing a bank in Garland, North Carolina, and the two traveled separately to Garland, with Craig Treadwell driving a car owned by Jackie and Dixon driving the stolen vehicle. After setting up a post-robbery meeting place, Dixon proceeded alone to the bank. Once inside, he robbed it of $8112 by asking for a cash loan and pulling a gun on the teller when she moved away from the counter, as previously planned. He then met Craig Treadwell at their prearranged meeting place and drove to Jackie Treadwell's house, where they divided the stolen money into three shares, with Craig and Dixon receiving the largest portions. Jackie gave Dixon a bag to put his share of the money in, and all three helped burn the clothes worn by Dixon and bury other evidence of the crime in Jackie's back yard. The Treadwell brothers then drove Dixon to the bus station in Wilmington, North Carolina, where Dixon purchased a ticket and boarded a bus for Delaware.
 
 
 6
 Several days later, Boykin and Patricia Carr were standing in line at a local auto parts store checkout counter with Jackie Treadwell. Jackie pulled several hundred dollars out of his pocket to pay for his purchase. Carr jokingly said, "You must have robbed a bank." Jackie smiled. Boykin, who was standing further back in the line, observed this incident and remembered his earlier conversation with Craig Treadwell about a planned credit union robbery. After leaving the store, he confronted Craig about the incident he had observed in the checkout line and Craig admitted to the bank robbery.
 
 
 7
 In the meantime, Dixon arrived in Delaware and began to call Jackie Treadwell repeatedly to find out if anyone had solved the robbery. He was eventually incarcerated in Maryland for stealing a car from the family he had lived with in Delaware. He continued to call the Treadwells from his cell block, seeking bail money.
 
 
 8
 The Treadwell brothers were indicted for their roles in the attempted robbery of the credit union and the bank robbery. Dixon and Boykin provided key testimony at trial. Both Craig and Jackie Treadwell took the stand and denied their involvement with the crimes described by Dixon and Boykin. At the close of trial after the jury had begun deliberations, the court received two notes from the jury foreperson, indicating that one elderly juror was so inattentive as to call his ability to serve into question. An evening recess was taken. The following morning, Craig Treadwell moved for a mistrial on the basis of the juror's inattentiveness. The court denied the motion after noting that the juror appeared alert. No further complaints were received from the jury foreperson.
 
 
 9
 The jury returned verdicts of guilt as to all charges. All but the conspiracy and aiding and abetting charges were dismissed on the government's motion, and those remaining charges stating a violation of § 2113 were consolidated for sentencing. Jackie Treadwell received a sentence of forty-six months on the consolidated counts and sixty months on the firearm charge, to run consecutively, plus a $1000 fine. Craig Treadwell received a sentence of sixty-three months on the consolidated counts and sixty months on the firearm charge, to run consecutively, plus a $2500 fine. Each Defendant was also ordered to pay restitution of $8112. These cases have been consolidated on appeal.
 
 II.
 
 10
 The Treadwells first assert that the district court erred in allowing Dixon to testify at trial that they helped him rob a convenience store and a pawn shop prior to the indicted offenses. We review questions of the admissibility of evidence of other crimes under Fed. R. Evid. 404(b) for abuse of discretion. United States v. Haney, 914 F.2d 602 (4th Cir. 1990).
 
 
 11
 Evidence of other crimes may be admitted if necessary and reliable, and if offered for some purpose other than proof of character. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988). Valid grounds for admission exist where the proffered evidence is relevant to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The probative value of evidence of other crimes which meets these criteria must nonetheless be weighed against its prejudicial effect. Fed. R. Evid. 403.
 
 
 12
 In this case, Dixon's testimony concerning the earlier robberies was relevant to show the Treadwell brothers' knowledge and intent with regard to the crime of conspiracy. The testimony showed that they were using Dixon as a gunman in the earlier crimes while they drove a getaway car, just as they did in the indicted offenses. Admission of this evidence was necessary, because the prior crimes established the context of the conspiracy. United States v. Smith, 446 F.2d 200, 204 (4th Cir. 1971); see also Rawle, 845 F.2d at 1247 n.4 (prior crimes admissible if they are "an essential part of the crimes on trial"). The reliability of the testimony regarding the convenience store robbery was established by the corroborative testimony of Boykin and a police officer. The reliability of the testimony regarding the pawn shop robbery was established by the corroborative testimony of the shop owner and a police officer. We find that testimony concerning the prior crimes met the requirements of Rule 404(b).
 
 
 13
 The Treadwells assert that even if admissible under Rule 404(b), the evidence of prior crimes was unfairly prejudicial. The mere fact that evidence is incriminating does not render it unfairly prejudicial within the meaning of Rule 403. Haney, 914 F.2d at 607. Rather, unfair prejudice is only shown where the evidence has the potential to cause the jury to render a decision on the basis of facts unrelated to the issues before it. United States v. Simpson, 910 F.2d 154, 158 (4th Cir. 1990) (quoting Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1134 (4th Cir. 1988)). Any such tendency inherent in this evidence was cured when the district court expressly instructed the jury that information regarding other crimes was only relevant to the question of a common scheme or plan. The district court did not abuse its discretion by admitting evidence of the convenience store and pawn shop robberies.
 
 III.
 
 14
 The Treadwells also challenge on relevancy grounds the district court's decision to admit Boykin and Carr's testimony regarding the post-robbery conversation with Jackie Treadwell in the local auto parts store. Relevancy determinations are entrusted to the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir. 1990) (finding no abuse of discretion in trial court's decision to admit evidence of post-offense events), cert. denied, 59 U.S.L.W. 3561 (U.S. 1991). Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.
 
 
 15
 We find that the testimony of Carr and Boykin was clearly relevant. The auto parts store conversation motivated Boykin to confront Craig Treadwell and ultimately resulted in Craig's confession to Boykin. The amount of money displayed by Jackie Treadwell in the store also established that he had recently acquired a large sum of money. The district court did not abuse its discretion in admitting evidence of this post-robbery incident.
 
 IV.
 
 16
 The Treadwells next challenge the sufficiency of the evidence used to instruct the jury and to convict them. When faced with a sufficiency challenge, we review the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We find that the evidence was sufficient to support these convictions.
 
 
 17
 The essential elements of conspiracy include an agreement between two or more persons to commit a crime, and an act in furtherance of that agreement. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). A conspiracy may be proved by circumstantial evidence. Id. In this case, the evidence of the Treadwell's conspiracy with Dixon consisted of testimony that they discussed the robbery plans with Dixon, that all three "cased" the credit union before attempting to rob it, that Craig Treadwell helped Dixon steal a car and gave Dixon a gun and clothes before sending him to the credit union and bank, that Jackie Treadwell gave Craig his keys and his car to facilitate the robbery, that both Jackie and Craig Treadwell took a cut of the proceeds after completion of the crime, and that both helped Dixon destroy the evidence of the crime and make his escape. Jackie Treadwell's appearance in the auto parts store with a large sum of money provided additional support for his involvement with the conspiracy, as did proof of Dixon's long distance calls to Jackie after fleeing to Delaware.
 
 
 18
 To establish that the Treadwells aided and abetted an armed bank robbery or the use of a firearm during the commission of a crime of violence, the government had the burden of showing that the substantive crime was committed with the Treadwell's knowledge and that they took actions reflecting their intent to facilitate it. United States v. Dixon, 658 F.2d 181, 189 n.17 (3d Cir. 1981). Aiding and abetting, unlike conspiracy, does not require proof of an agreement, but is established upon a mere showing of joint activity. United States v. Peterson, 524 F.2d 167, 174 (4th Cir. 1975), cert. denied, 423 U.S. 1088, cert. denied, 424 U.S. 925 (1976).
 
 
 19
 Dixon's testimony established that Craig Treadwell gave Dixon a semi-automatic pistol to use during the robberies. In light of this evidence, Craig Treadwell's role as aider and abettor cannot be questioned. Jackie Treadwell played a less direct, but no less significant, role in the indicted offenses. Although he was not present at the scene of the bank robbery or at the attempted robbery of the credit union, he had handed Dixon his pistol in order to facilitate the earlier convenience store robbery. He also participated in the planning for the credit union and bank robberies, and was therefore aware that a gun would likely be used. This was sufficient to convict him of both aiding and abetting an armed bank robbery and of aiding and abetting the use of a firearm during a crime of violence. United States v. Grubczak, 793 F.2d 458, 463 (2d Cir. 1986) (evidence need only show that defendant was on notice of likelihood of weapon's use to sustain aiding and abetting conviction under § 2113(d)); United States v. James, 528 F.2d 999, 1015 (5th Cir.) (defendant need not be present at crime to be liable as aider and abettor unders 924(c)), cert. denied, 429 U.S. 959 (1976).
 
 
 20
 On these facts, a rational trier of fact could have found the essential elements of conspiracy and aiding and abetting beyond a reasonable doubt. The evidence was therefore sufficient to sustain these convictions.*
 
 V.
 
 21
 Jackie Treadwell argues that the district court should have granted him a downward departure at sentencing under United States Sentencing Commission, Guidelines Manual, § 3B1.2(a,b) (Nov. 1991), for his minor or minimal role in the offense. The question of whether he was a minor or minimal participant is a factual determination subject to the "clearly erroneous" standard of review. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989).
 
 
 22
 We find that the district court's sentencing decision was not clearly erroneous. The evidence presented at trial established that Jackie Treadwell was actively involved in planning the robberies of the bank and credit union, that he shared the proceeds of the bank robbery, and that he helped Dixon hide evidence of the crime and effect his escape after the fact. He may indeed have played a lesser role in the robberies than Craig Treadwell or Dixon. This does not entitle him to a reduction in sentence under U.S.S.G. § 3B1.2, however, because his actions were clearly an essential part of the conspiracy. United States v. Palinkas, 938 F.2d 456 (4th Cir. 1991) (minor role adjustment not appropriate where actions essential to offense, even though defendant did less than other participants); see also United States v. Glasco, 917 F.2d 797, 800 (4th Cir. 1990) (defendant not entitled to reduction for minor role as mere go-between where he actually sold drugs in question), cert. denied, 59 U.S.L.W. 3599 (U.S. 1991). The district court's decision denying the requested downward adjustment was not clearly erroneous and is affirmed.
 
 VI.
 
 23
 Last, Craig Treadwell argues that the district court erred in denying his Motion for Mistrial after one juror's inattentiveness was brought to the court's attention. The district court's decision not to discharge the juror and not to declare a mistrial is reviewed for abuse of discretion. United States v. Sears, 663 F.2d 896, 900 (9th Cir. 1981), cert. denied, 455 U.S. 1027 (1982).
 
 
 24
 We find no abuse of discretion here. The court immediately called a recess upon learning of the juror's inattentiveness and only resumed trial the following morning after observing the juror and concluding that he appeared sufficiently alert to perform his duties. No further complaints about the juror were received. Even if the district court had deemed the juror incapable of rendering service, it is unlikely that it would have granted the Motion for Mistrial, as it had available the less drastic option of simply dismissing the juror and allowing a verdict to be returned by the remaining jurors, pursuant to Fed. R. Crim. P. 23(b).
 
 
 25
 For all the foregoing reasons, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Because the evidence was sufficient, the Treadwell brothers' challenge to the jury instructions on grounds of insufficient evidence must likewise fail. See United States v. Horton, 921 F.2d 540, 543 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3850 (U.S. 1991)