4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jean Oglesby HUBBARD, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Augustine Perez, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Richard Perez, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Malinda Jenkins, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Audrey Mae Colmore, Defendant-Appellant.
Umited States of America, Plaintiff-Appellee,
v.
Teresa Davis Massie, Defendant-Appellant.
United StateS of America, Plaintiff-Appellee,
v.
Ramos Antonio Altagracia Tejada-Reynoso,
Defendant-Appellant.
 Nos. 91-5272, 91-5281, 91-5282, 91-5781, 91-5794, 91-5795, 91 -5802.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 30, 1992.
Decided: August 27, 1993.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-90-112-R-L)
 Sidney Harold Kirstein, McCrorie, Kirstein & Gay, Lynchburg, Virginia; Jonathan Mitcalfe Apgar, Damico & Apgar, Roanoke, Virginia, for Appellants.
 Ray Burton Fitzgerald, Jr., Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 Gary M. Bowman, Martin, Hopkins, Lemon & Edwards, P.C., Roanoke, Virginia, for Appellant Jenkins;
 Marc James Small, Roanoke, Virginia, for Appellant, Richard Perez
 Grady W. Donaldson, Jr., Twery, Schenkel & Donaldson, P.C., Lynchburg, Virginia, for Appellant, Colmore.
 Sharon R. Chickering, Bounds & Dorsey, P.C., Roanoke, Virginia, for Appellant Massie;
 Terry N. Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Virginia, for Appellant Tejada-Reynoso.
 E. Montgomery Tucker, United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before ERVIN, Chief Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 A federal grand jury returned an indictment charging fifteen defendants on twenty-two counts revolving around a cocaine conspiracy operated in Lynchburg, Virginia, from 1985 to 1989. Eight of the defendants pleaded guilty to various charges and most of them testified at trial.[1] Seven defendants, the appellants here,[2] pleaded not guilty and were tried together, despite their numerous motions to sever.[3]
 
 
 2
 The indictment charged Augustine Perez, the conspiracy's alleged ringleader, with conspiring to distribute cocaine in violation of 21 U.S.C. Sec. 846, possession of cocaine with intent to distribute and distribution of cocaine in violation of 21 U.S.C. Sec. 841, distribution of cocaine to persons under the age of twenty-one in violation of 21 U.S.C. Sec. 845a,[4] engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. Sec. 848, and carrying a firearm during a drug transaction in violation of 18 U.S.C. Sec. 924(c). Appellants Jean[5] Hubbard, Richard Perez, and Altagracia Tejada-Reynoso were charged with conspiring to distribute cocaine and possession of cocaine with intent to distribute in violation of 21 U.S.C. Secs. 846 and 841. Appellants Teresa Massie, Audrey Colmore, and Malinda Jenkins were charged only with conspiracy.
 
 
 3
 A jury convicted all seven appellants of conspiracy. In addition, the jury convicted Jean Hubbard, Richard Perez, and Augustine Perez for possession with intent to distribute cocaine. Augustine Perez also was convicted of distributing cocaine, possession with intent to distribute cocaine on public school property, engaging in a continuing criminal enterprise, and possessing a firearm during a drug transaction.
 
 
 4
 The appellants' primary contentions on appeal are that the evidence is insufficient to sustain their convictions, that the district court erred by failing to sever their cases, and that the court erred in calculating their sentences on improper amounts of cocaine. We consider them in that order. In our view, the appellants' other arguments do not merit detailed discussion.[6]
 
 
 5
 * Considering first the appellants' challenge to the sufficiency of the evidence, we think there is sufficient evidence to affirm the convictions of appellants Augustine Perez, Richard Perez, Jean Hubbard, Altagracia Tejada-Reynoso, Audrey Colmore, and Teresa Massie. The evidence is insufficient, however, to uphold the conviction of Malinda Jenkins, and we reverse her conviction.
 
 
 6
 We must uphold the appellants' convictions "if there is substantial evidence, viewing the evidence in the light most favorable to the government, to support the finding of guilt." United States v. Rusher, 966 F.2d 868, 878 (4th Cir.), cert. denied, 113 S. Ct. 351 (1992). The test is whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))." We must consider circumstantial evidence as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).
 
 
 7
 To establish a conspiracy under 21 U.S.C. Sec. 846, the government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to engage in conduct that violates federal drug law, and (2) that the defendant voluntarily became a party to that agreement. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991). "Proof of conspiracy may be circumstantial; it need not, and normally will not, be proved by direct evidence." United States v. Guinta, 925 F.2d 758, 764 (4th Cir. 1991). Once the government has proved a conspiracy, "the evidence need only establish a slight connection between each defendant and the conspiracy to support a conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S. Ct. 3051 (1992).
 
 A. Augustine Perez
 
 8
 The jury found Augustine Perez guilty of conspiracy, directing a CCE, possessing cocaine with intent to distribute, distributing cocaine, possessing cocaine with intent to distribute on school property, and possessing a firearm during a drug trafficking offense. He challenges the sufficiency of the evidence of all his convictions.[7]
 
 
 9
 As to the conspiracy conviction, the government's key witness, Gary Anderson,[8] testified that Augustine gave him about one-half kilogram of cocaine to sell each week, and during the course of the conspiracy, supplied him with eight to ten kilograms of cocaine. From those sales, Gary Anderson testified that he earned about $5,000 weekly. Gary Anderson named other people in "the coke business" with Augustine: Jimmy Garrison, Jesse Calloway, Jean Hubbard, Audrey Colmore, and Teresa Massie. Finally, Gary Anderson stated that Augustine conducted his cocaine transactions in the master bathroom of a rented house on Staunton Street in Lynchburg.
 
 
 10
 The government's other key witness, Anita Perez, Augustine's estranged wife, also testified in detail about her husband's cocaine distribution ring.[9] She travelled to New York on various occasions to pick up cocaine and bring it back to Lynchburg for distribution.
 
 
 11
 Although she stated that she never actually saw Augustine sell cocaine at the Staunton Street house, she said that he practically "lived" in the master bathroom at the house, smoking coke and counting money. She testified that Augustine came to the elementary school where she worked as a janitor and asked her to go to the front of the school while he stored something in the janitor's closet.[10] Other witnesses corroborated the accounts of Anita Perez and Gary Anderson, testifying that Augustine used cocaine, had a constant supply of cocaine, distributed cocaine to them, asked them to make trips to pick up cocaine for him in New York City, kept guns and cocaine in the bathroom of his home on Staunton Street, and always had cash lying around at the Staunton Street house.
 
 
 12
 A state trooper who arrested Augustine for DUI after he crashed into a fence in September 1988 also testified against him. At the time of the arrest, the officer found three ounces of cocaine on Augustine and a briefcase containing $15,700 in cash. He testified that Augustine told him there was plenty more cash where that came from. Also, government pen registers showed numerous telephone calls between Augustine and the other alleged co-conspirators. Finally, Augustine's computer disks, seized by the government, contained detailed records of his cocaine transactions.[11] Thus, abundant evidence established both a conspiracy and Augustine's involvement in it.
 
 
 13
 The jury also properly convicted Augustine of possession of cocaine with intent to distribute and distribution of cocaine. In addition to the conspiracy evidence just discussed, Gary Anderson testified to numerous instances, beginning in 1987, when Augustine distributed cocaine to him. Other witnesses testified to times when they saw Augustine with cocaine in his possession and to times when he distributed cocaine to them.[12]
 
 
 14
 Many witnesses also testified that Augustine kept guns in the Staunton Street house, where he conducted cocaine transactions.[13] From this evidence, the jury could easily infer that Augustine possessed a firearm while conducting a drug transaction in violation of 18 U.S.C. Sec. 924(c).
 
 
 15
 As to the CCE conviction under 21 U.S.C. Sec. 848, the government had to prove that Augustine obtained substantial resources from a continuing series of violations of the federal drug laws, and that he managed at least five people who shared his illegal purpose. United States v. Ricks, 882 F.2d 885, 890 (4th Cir. 1989), cert. denied, 493 U.S. 1047 (1990). We find more than adequate evidence to sustain Augustine's CCE conviction. Gary Anderson's testimony that the conspirators sold substantial amounts of cocaine over a long period of time established ongoing drug violations, as did Anita Perez's testimony that Augustine obtained cocaine from a supplier in New York City.[14] Evidence also establishes that Augustine managed at least five people in the enterprise. Gary Anderson testified that at least five people, in addition to himself, were involved in the"coke business" with Augustine. Moreover, about ten individuals, charged and uncharged, testified about their activities on Augustine's behalf and at his request. Cf. id. at 891 (government need not prove that five individuals acted in concert or were engaged in the same offense). Finally, from evidence of payments and debts of tens of thousands of dollars, purchases of expensive items of property, and other financial extravagance, the jury was free to infer that Augustine obtained substantial resources from the enterprise.
 
 B. Richard Perez
 
 16
 Although the government presented less evidence of Richard Perez's role in the drug conspiracy than that of his brother Augustine, we find sufficient evidence to sustain both of his convictions-conspiracy and possession of cocaine with intent to distribute. Gary Anderson testified that he met Richard at the airport several times when Richard was carrying up to a kilogram of cocaine, and Gary brought him to Augustine's house on Staunton Street. Margie Lee Rush, an indicted co-conspirator, testified that she was present, along with Richard and Malinda Jenkins, when Augustine opened a black briefcase containing two freezer bags of cocaine. Anita Perez testified that Richard came down to visit with a "package," referring to a package of cocaine. A Maryland state trooper testified that when he arrested Richard for speeding on Interstate 95 North, he found three grams of cocaine and two handguns in his car. A final item of inculpatory evidence was the testimony of an FBI agent who arrested Richard at his home in New York City. When the agent asked Richard about one of the other appellants, Altagracia Tejada-Reynoso, he replied, "I'm out of that business."
 
 
 17
 This evidence established Richard's connection with the conspiracy. It also established that he possessed cocaine with intent to distribute, as Gary Anderson testified that Richard possessed up to a kilogram of cocaine on various occasions. A jury may infer intent to distribute from "possession of ... a quantity of drugs larger than needed for personal use." United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990), cert. denied, 111 S. Ct. 2019 (1991); see also United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989) (entirely circumstantial evidence is sufficient to support conviction for possession with intent to distribute).
 
 C. Jean Hubbard
 
 18
 We likewise affirm Jean Hubbard's convictions for conspiracy and for possession of cocaine with intent to distribute. The government alleged that she transported and sold cocaine for the conspiracy. Various witnesses testified that Jean Hubbard told them that while returning from a "run" for Augustine to purchase cocaine in New York City, she set off buzzers at LaGuardia Airport and had to take a bus back to Lynchburg. Gary Anderson testified that Jean Hubbard confided in him that she had been carrying a kilogram of cocaine at the time, and that Augustine had paid her $1,000 to make the trip. Anita Perez also testified about Jean Hubbard's trips to New York City to transport cocaine for Augustine.
 
 
 19
 Both Frances Anderson and Jackie McCoy testified that they bought cocaine from Jean Hubbard. Though neither connected these sales to the conspiracy, their testimonies support Jean Hubbard's conviction for possession with intent to distribute. In addition, Jean Hubbard's husband, Greg Hubbard, testified that he saw her sell cocaine and helped her package cocaine in plastic bags to sell.
 
 D. Altagracia Tejada-Reynoso
 
 20
 The government alleged that Altagracia Tejada-Reynoso ("Gorcio") supplied cocaine for the conspiracy from New York City. Evidence against Gorcio, which is more than sufficient to sustain his convictions for conspiracy and possession with intent to distribute, included the testimonies of three witnesses. Anita Perez testified that she took money to him on her trips to New York City to buy cocaine for Augustine and received "packages" in return. She also testified that she wired money to Gorcio through Western Union and that she often picked him up at the Lynchburg airport when he came down to see Augustine. Further damaging evidence against Gorcio came from Othea Freeman, Anita Perez's sister, who testified that Gorcio came by her house with Augustine, left a garbage bag of cocaine in the attic, and later returned for it.
 
 
 21
 Jesse Calloway, a co-conspirator, testified that Augustine told him that he got his "stuff" from Gorcio. Calloway also testified that he gave Gorcio a ride from Augustine's house to the Lynchburg airport, and that he bought cocaine from Augustine while Gorcio was present. Finally, a government pen register showed phone calls from Augustine's phone to Gorcio's phone in the Bronx. This evidence establishes Gorcio's participation in the conspiracy and his possession of cocaine with intent to distribute.
 
 E. Teresa Massie
 
 22
 Teresa Massie challenges the sufficiency of the evidence relied on to convict her of conspiracy. She was one of Augustine's girlfriends and admitted using cocaine with him. The principal incriminating evidence against Massie came from Gary Anderson, who testified that she told him that she sold cocaine and that she once went to Augustine's house to get a "package." Gary also testified that on one occasion he drove two men from the airport to a parking lot behind a Wendy's restaurant in Lynchburg, where the men transferred a "puffy package" into a car driven by Massie. Gary Anderson approximated that the package contained eight ounces or one half kilogram of[15] cocaine. He testified that he saw the package again two hours later at Augustine's house.
 
 
 23
 Special Agent John Terry testified that Massie told him in an interview that Augustine once offered her $1,000 to go to New York City to pick up cocaine for him, but she declined. Agent Terry also testified that Massie told him that she received $20 worth of cocaine fromAugustine two or three times each week from February 1989 to July 1989. Massie's testimony corroborated that of Special Agent Terry. She also testified that she once held a briefcase for Augustine for a short time. The government's pen register showed thirty-five calls from Augustine to Massie over a sixty-day period.
 
 
 24
 It is true that some of the evidence against Massie could have arisen from circumstances other than involvement in the conspiracy. The phone calls, the briefcase, and Augustine's gifts of cocaine, standing alone, might have indicated no more than Massie's romantic involvement with Augustine. However, a rational jury might have chosen to believe Gary Anderson's testimony about the incident with the "package" at Wendy's restaurant and his testimony that Massie told him she sold cocaine. Viewing the evidence in the light most favorable to the government, we believe it is sufficient to sustain Massie's conspiracy conviction.
 
 F. Audrey Colmore
 
 25
 We likewise must reject Audrey Colmore's claim that the evidence is insufficient to sustain her conspiracy conviction. Our conclusion rests on at least the testimonies of three witnesses. First, Gary Anderson testified that he saw Colmore sell cocaine for Augustine at a "nip joint." Second, Margie Lee Rush testified that Colmore stopped her on the street after the indictment came down and said she hoped "the Government didn't know she had sold coke before." Third, Teresa Massie testified that Colmore told her if she knew anyone looking for cocaine, Massie should let her know so she could make some money.
 
 
 26
 Although Massie's testimony did not show that Audrey sold cocaine for Augustine, Gary Anderson's testimony did. Additional evidence also connected Colmore to Augustine: she worked at his clothing store, used cocaine with him, and visited his house on Staunton Street.[16] Finally, a pen register showed frequent phone calls from Augustine's clothing store to Colmore.
 
 G. Malinda Jenkins
 
 27
 We think that the evidence against Malinda Jenkins does not point sufficiently to her involvement in the conspiracy. We must overturn her conviction if the evidence "could only lead to a finding of guilt by an unacceptable process of raw speculation rather than by a reasoned process of inferring guilt beyond a reasonable doubt." United States v. Guinta, 925 F.2d 758, 766 (4th Cir. 1991). It seems to us that a conclusion of Jenkins's guilt simply could not have resulted from a reasoned process of inferring from the trial evidence the requisite elements of a conspiracy.
 
 
 28
 It is true that Jenkins used cocaine, dated Augustine, lent him $400, and co-signed a lease with him for the house on Staunton Street, where they lived together for three months.[17] She testified adamantly, however, that cocaine was not stored in the house while she was there and that she never witnessed any cocaine transactions at the house. The government produced no evidence to the contrary. Its only evidence consisted of testimony from Gary Anderson that he had known Jenkins for a long time, testimony from Jesse Calloway that he had used cocaine with Jenkins but "it wasn't a conspiracy," and testimony from Frances Anderson that she was not aware that Jenkins sold drugs for Augustine. Jackie McCoy, an indicted co-conspirator who pleaded guilty, testified that she had never seen Jenkins at the Staunton Street house.
 
 
 29
 No evidence showed that Jenkins knew how Augustine planned to use the $400 lent to him. The only evidence possibly connecting Jenkins to the conspiracy is her testimony that she travelled to New York City with Augustine, Greg Hubbard, and Jean Hubbard in 1987 on a social trip. Jenkins testified that on the way home from New York City, when they were having car problems, Jean Hubbard commented to her that she "hope[d] that shit holds up" and then said something about a package. The testimonies of Jean Hubbard, Greg Hubbard, and Augustine corroborated Jenkins's testimony that it was a social trip.[18] We do not find this evidence sufficient to uphold a conspiracy conviction.
 
 II
 
 30
 All of the appellants, except Augustine Perez, claim that the district court abused its discretion in denying their motions to sever. See Fed. R. Crim. P. 14. They argue (1) that the mass proceeding against them created a risk that they would be found guilty by association, and (2) that the evidence was so confusing to the jury that it resulted in prejudice to them.[19]
 
 
 31
 The general rule, of course, is that defendants charged in the same indictment ordinarily should be tried together. United States v. Brooks, 957 F.2d 1138, 1145 (4th. Cir.), cert. denied, 112 S. Ct. 3051 (1992). The party moving for severance must establish that actual prejudice would result from a joint trial. Id.; Fed. R. Crim. P. 14. "The fact that evidence against one defendant," in this case Augustine, is "stronger than the evidence against other defendants does not itself justify severance." Brooks, 957 F.2d at 1145 (citing United States v. Hargrove, 647 F.2d 411, 415 (4th Cir. 1981)).[20]
 
 
 32
 It is true that all of the defendants at trial sat at a long table together, all were black, all were approximately the same age, and all knew each other socially, apart from any conspiracy. Nonetheless, the government presented legally sufficient evidence to support each of their convictions,[21] and we do not find any actual prejudice resulting from the district court's failure to sever. As we stated recently in Brooks, the defendants were not " 'convicted simply by innuendo because [their] associates were plainly guilty.' " Id. (quoting Hargrove, 647 F.2d at 415). Rather, "[t]here was abundant evidence-independent of the evidence against their codefendants-supporting [each of the defendants'] convictions...." Id.
 
 
 33
 Nor do we think the joint trial created sufficient confusion to cause actual prejudice.[22] As we have held, jury confusion can rise to the level of actual prejudice. United States v. Coward, 630 F.2d 229, 231 (4th Cir. 1980), cert. denied, 456 U.S. 946 (1982). In Coward, the defendants had similar names, which even the attorneys could not keep straight. Id. After a day and a half, the jurors told the judge they were confused and requested additional information. Id. Furthermore, the indictment alleged one conspiracy but the evidence showed two. In discussing the standard for prejudice, we listed factors that can confuse a jury: many defendants, a complex conspiracy, a complex trial, subtleties in the evidence, and evidence from a common source.
 
 
 34
 Id.
 
 
 35
 We recognize that the conspiracy here was complex,[23] and much (although by no means all) incriminating evidence came from one source, Gary Anderson. However, unlike Coward, the evidence related to just one conspiracy and delineated each defendant's role in that conspiracy. Further, the judge emphasized in his instructions to the jury that they consider the evidence against each defendant[24] separately. See Brooks, 957 F.2d at 1138. To be sure, the opportunity for confusion existed, but in view of our finding that the government produced legally sufficient evidence to convict seven of the eight defendants, that potential did not materialize into the high level of prejudice required to find that the district court abused its discretion. See id. at 1145.
 
 III
 
 36
 All of the appellants except Augustine Perez contend that the district court attributed to them unproven quantities of cocaine for sentencing purposes. They argue that the evidence did not establish beyond a reasonable doubt the amount of cocaine involved in the conspiracy. For sentencing purposes, however, the government need only prove the amount of cocaine by a preponderance of the evidence. United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989), cert. denied, 493 U.S. 1084 (1990). Each member of a conspiracy is responsible for reasonably foreseeable acts of others "in furtherance of the execution of jointly undertaken criminal activity." United States Sentencing Commission, Guidelines Manual (U.S.S.G.)Sec. 1B1.3, comment. (n.1, 2); United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992).
 
 
 37
 Here, the evidence supports the amounts attributed by the district court to each defendant for sentencing.[25] Gary Anderson testified that he personally received eight to ten kilograms of cocaine during the conspiracy, and that he saw Teresa Massie with another one-half kilogram. He further testified that Jean Hubbard told him she transported a kilogram from New York City to Lynchburg and that he picked up Richard Perez several times at the airport when Richard was carrying a kilogram of cocaine.[26] Anita Perez admitted to transporting a kilogram or one-half kilogram package on each of four trips from New York where she had met with Gorcio, and saw another ten sandwichsized bags of cocaine in her sister's attic, where Gorcio and Augustine had stored them.
 
 
 38
 Although the only cocaine actually admitted as evidence was three grams seized from Augustine Perez after his car accident and DUI arrest, the sentencing guidelines do not require precise calculations of drug quantities. When the amount of drugs seized does not reflect the scale of the offense, the district court may "approximate" the quantity for sentencing purposes, by considering other available information. U.S.S.G. Sec. 2D1.1 comment. (n.12); see United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992). The district court here had ample evidence from which to calculate the quantities of cocaine used to sentence the appellants. Because we do not find the district court's calculations clearly erroneous, see United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990) (calculation of the quantity of drugs is a factual determination), we uphold the appellants' sentences.
 
 
 39
 In sum, we reverse the conviction of Malinda Jenkins, but affirm the convictions and sentences of the other six appellants.
 
 AFFIRMED IN PART; REVERSED IN PART
 
 
 [1]
 These eight indicted co-conspirators were Anita Perez, Jesse Calloway, Frances Anderson, Greg Hubbard, Tamara Renee Hamlett, Margie Lee Rush, Jackie McCoy, and Hugh Wright
 
 
 [2]
 Augustine Perez, Richard Perez, Jean Hubbard, Altagracia TejadaReynoso, Teresa Massie, Audrey Colmore, and Malinda Jenkins
 
 
 [3]
 Fed. R. Crim. P. 14
 
 
 [4]
 Amended by 21 U.S.C. Sec. 860
 
 
 [5]
 The district court severed a perjury count against Jean Hubbard
 
 
 [6]
 The defendants argue, among other things, that the district court improperly allowed the jury to consider prejudicial evidence of cocaine use in violation of Federal Rule of Evidence 404(b); that the district court improperly refused to amend the indictment to reflect the evidence; that the district court improperly admitted co-conspirators' statements before the government established the existence of a conspiracy; and that thegovernment committed a Brady violation by refusing to inform the defense that James Garrison, if called, would have contradicted the testimony of the government's star witness, Gary Anderson. Defendant Augustine Perez asserts that the government violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. We find all of these claims meritless
 
 
 [7]
 Augustine, in his brief, alleges broadly that "there simply was no evidence to show any conspiracy to commit any offense in narcotics trafficking and no evidence to show that the Defendant distributed narcotics to other individuals for profit or possessed weapons during and in relation to a drug trafficking offense." He presents no argument, however, as to why the seemingly abundant evidence against him is insufficient, other than pointing to the "inherent bias" in the testimonies of Gary Anderson and Anita Perez
 
 
 [8]
 Anderson, who had played a major role in the conspiracy, testified under immunity
 
 
 [9]
 We are little impressed with Augustine's argument that we should discount the testimonies of both Gary Anderson and Anita Perez because they received lenient treatment from the government for their testimonies and because both harbor personal animosity toward him, giving them a motive to fabricate their testimonies. We, of course, are bound by the "credibility choices of the jury," and will not weigh evidence or review credibility of a witness in resolving issues of substantive evidence. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1983)
 
 
 [10]
 This evidence is sufficient to uphold Augustine's conviction under 21 U.S.C. Sec. 845a
 
 
 [11]
 Augustine argues that the government seized these disks in violation his Fourth Amendment rights. This claim, even if correct (and we do not intimate that it is), would not affect the outcome of this appeal; the error would be harmless, in light of the overwhelming evidence against Augustine. See Chambers v. United States, 399 U.S. 42, 52-53 (1970)
 
 
 [12]
 Margie Lee Rush testified that Augustine gave her cocaine every evening from October 23, 1988, to December 19, 1988. Jesse Calloway, Greg Hubbard, and Jackie McCoy, and others testified that Augustine supplied them with cocaine at various times
 
 
 [13]
 Anita Perez testified that Augustine had guns and frequently wore a shoulder holster. Gary Anderson testified that Augustine had eight to ten guns, Jesse Calloway testified that Augustine owned and carried guns, and Frances Anderson testified that she saw Augustine carrying a gun. Greg Hubbard testified that he saw a gun in the bathroom while buying cocaine from Augustine. Testimonies of other witnesses were similar
 
 
 [14]
 Gary Anderson himself received one-half kilogram of cocaine from Augustine to sell each week for about six months
 
 
 [15]
 Massie argues that the district court erred in allowing Gary Anderson, a lay witness, to testify without a proper foundation that the "puffy package" contained cocaine. Although Anderson neither saw nor tasted the contents of the package, as it was completely wrapped in tape, the court admitted his testimony that the package contained approximately one-half kilogram of cocaine
 Of course, a foundation is necessary before a lay witness may testify that a particular substance is an illegal drug. See United States v. Paiva, 892 F.2d 148, 156-57 (1st Cir. 1989); United States v. Sweeney, 688 F.2d 1131, 1145-46 (7th Cir. 1982). Paiva holds that "[a]lthough a drug user may not qualify as an expert," he still may be competent, based on past experience and observation, to express a lay opinion that a particular substance is cocaine. Paiva, 892 F.2d at 157. Here, the evidence showed that Gary Anderson had extensive experience with cocaine and with transporting "packages" such as the one he saw transferred into Massie's car. Thus, we find that the district court did not abuse its discretion in allowing this testimony.
 
 
 [16]
 Berniece Perkins, another of Augustine's girlfriends, testified that she saw Colmore at the Staunton Street house but did not link her presence to a drug conspiracy
 
 
 [17]
 Malinda Jenkins moved out in May 1988
 
 
 [18]
 Apparently, it was Greg Hubbard's birthday
 
 
 [19]
 The defendants also argue that the case consisted largely of improperly admitted co-conspirator statements, relevant to some of the defendants, but highly prejudicial to others. We disagree. See Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992)
 
 
 [20]
 Otherwise, we would have to grant motions to sever in conspiracy cases almost as a matter of course. Brooks, 957 F.2d at 1145
 
 
 [21]
 This is not true for the conviction of Malinda Jenkins, which we overturn on the grounds of insufficient evidence, supra
 
 
 [22]
 In holding that the confusion created by a joint trial of five defendants did not cause prejudice, we noted that the trial judge had instructed the jury specifically "not to consider the evidence against one defendant when deciding upon the guilt or innocence of another defendant." Brooks, 957 F.2d at 1145. Here, the trial judge instructed:
 A separate crime is charged against one or more of the defendants in each count of the indictment. Each offense and the evidence pertaining to it should be considered separately by you. Also, the case of each defendant should be considered separately and individually. The fact you may find one or more of the accused guilty or not guilty of any of the offenses charged should not control your verdict as to any other offense or any other defendant.
 
 
 [23]
 The conspiracy spanned a period of five years and involved at least fifteen alleged conspirators. Some forty witnesses testified over the course of a three-week trial
 
 
 [24]
 See supra note 22
 
 
 [25]
 The amounts are: Jean Hubbard, 5 kilograms; Altagracia TejadaReynoso, 5 kilograms; Richard Perez, 3.5 kilograms; Audrey Colmore, 500 grams; and Teresa Massie, 500 grams
 
 
 [26]
 James Garrison, whom the government decided not to call as a witness, and whose testimony the defense now argues is the basis of a Brady violation, would have testified that Gary Anderson lied about the amount of cocaine involved in the conspiracy